Spencer
v.
Tilden.

SPENCER *against* TILDEN and TILDEN.

ASSUMPSIT, tried at the Oneida circuit, July, 1825, before WILLIAMS, C. Judge.

Selling cows, &c. on a contract to return double the same number and description, at the end of four years, is not usurious. So of sheep, to double in three years. (Vid. note, at end of the principal case.)

The action was upon a written contract in these words: " April 15th, 1819. For value received, we promise to pay and deliver to John Spencer, or bearer, three hundred and sixty dollars, or twelve good middling cows, and twelve good calves which come of said cows above mentioned, to be paid and delivered at the dwelling house of said Spencer's now is in, four years from the date, in Verona. Said cows not to exceed eight years old; nor under four years old. As witness our hands. *John Tilden.*
*Ithiel Tilden.*"

In an action on a written promise, not sealed, to pay and deliver $360, or 12 cows, &c. expressed to be for value received; *held,* that the value of the consideration, and of the cows, to be delivered, might be inquired into with a view to see whether the sum expressed, was intended by the parties as a penalty, or as liquidated damages; and it appearing that the sum expressed was

The execution of this contract was proved by the plaintiff, at the trial; and also that interest upon the 360 dollars, from April 15th, 1823, to the *quarto die post* of August term following, would be $7 87; and the plaintiff claimed to recover $367 87.

The defence was, 1. Usury; 2. Performance.

The evidence to sustain the defence of usury, was, that the plaintiff, a few days before the date of the agreement, agreed with the defendants to let them have six cows for four years; and that the defendants, at the end of the term, should return him twelve cows with calf, or with calves by their sides, or pay him $30 each for the six cows. The plaintiff admitted it was more than the cows were worth: but said he would put them at that sum, so as to be sure and have the cows again. He said, at the same time, that his bargain was as good as 25 per cent. interest. That, ac-

much beyond the value of either; *held,* that it was in nature of a penalty; and that the plaintiff must be confined to the value of the cows to be delivered, with interest, as the measure of his damages.

A promise in writing, was to deliver twelve cows, with twelve calves, which come of said cows, on, &c.; *held,* that in an action against the promissor, he could not show, that at the time of signing the contract, the promissee declared, (calling witnesses to his declaration,) that he would, notwithstanding, receive twelve cows with calf, or with calves by their sides; and that the defendant, on the day stipulated, tendered eleven cows, with calves by their sides, and one cow with calf, which calved the evening after the tender; as this would be to vary the express terms of the written contract.

cordingly, the plaintiff afterwards delivered six cows to the defendants, one or two of the cows having calves by their sides, and the residue being with calf; and the defendants executed the contract in question. This was on the day of its date. The plaintiff then reiterated, that his bargain was as good to him as 25 per cent.; and the defendants answered, that it was more. The plaintiff replied, it was worth 25 per cent.; but he did not wish them to take the cows. The defendants also proved, that the cows which they then received were not so good as middling cows; and were not then worth more than $19 each; in the whole, $114. The defendants also proved, (though this was objected to by the plaintiff as immaterial,) that twelve good middling cows, with calves by their sides, would, on the 15th April, 1823, have been worth $204.

To sustain the defence of performance, the defendants offered to prove, that the plaintiff, on the parties' coming together, on the day of executing the contract in question, produced it ready written; that the defendants objected to its terms, and that it should have been for 12 cows, either with calf, or with calves by their side; that the plaintiff said this should make no difference; and if the defendants would sign the contract as it was, he would take twelve cows either with calf, or with calves by their side, and called witnesses to what he said. Whereupon the defendants signed the contract; and on the day for its performance, drove to the place of performance twelve good middling cows, eleven having calves, by their sides, and one being with calf, and which actually calved on the evening of the same day. That these cows, in all respects, answered the terms of the agreement, with the single difference, that one of them had not a calf by her side. These offers were made, upon the ground that the plaintiff had committed a fraud upon the defendants, in the above transactions; but the evidence was rejected by the Judge, on the ground that it went to vary a written contract by parol; and that the tender was not a compliance with the written contract.

The plaintiff then proved that, at the date of the contract, cows were about one-fifth higher than in 1823; and that the

ALBANY,    usual practice of letting cows, was to double in fou years;
Oct. 1825.  the party letting, usually taking part of all risk of accidents.

Spencer    The defendants objected to the proof of usage, but the ob-
v.        jection was overruled.
Tilden.

The Judge then said, that if it was agreed, or intended
by the parties, that the plaintiff should receive above 7 per
cent. interest, the note would be void for usury; and he
should consider that as a question of fact for the jury to
decide. If the plaintiff was entitled to recover at all, the
360 dollars were to be considered in the nature of a penal-
ty; and the plaintiff could not recover above the 12 cows
and calves when they became due, with interest to the
*quarto die post*, being $208; and hereupon a verdict for
that sum was taken for the plaintiff, subject to the opinion
of this Court on the above case, and under an agreement.
that they should give judgment, or set aside, or modify
the verdict, accordingly as they should hold the law to be

*S. Beardsley*, for the plaintiff.

1. Here was no usury. The sale was of property *bona
fide*, upon a special agreement. The seller took all the
risk of the market as to the value of the cows, at the time
of the payment. To constitute usury, there must be a *loan*
upon excessive interest, to be *repaid at all events*. (Ord
on Usury, 29, 69, 70, 71, 72. Vin. Abr. *Usury*, (C. 10.)
*Fountain* v. *Grymes*, Cro. Jac. 252. *Roberts* v. *Trenayne*,
id. 507, 508. *Earl of Chesterfield* v. *Jansen*, 1 Wils. 292,
per Burnett, J. *Richards* v. *Brown*, Cowp. 776, 7.) Here,
the cows had actually depreciated in value, at least one-fifth.
As to the high price of $360, it is enough that the contract
was in the alternative, to pay that sum or deliver the cows.
By the latter, the defendants might have saved themselves;
which takes away the inference of usury, arising from this
feature of the contract. (*Tate* v. *Wellings*, 3 T. R. 531.
*Maddock* v. *Rumball*, 8 East, 304. *Bank of Chenango* v.
*Curtiss*, 19 John. 326.) Inadequacy of price can only be
insisted on as a badge of usury, where there is a loan. (Ord
on Usury, 74, 5.) Where there is a loan of money, and a
sale at a very low price, of goods, the value of which is fluc

tuating in the market, this is not evidence of usury. (*Stewart* v. *Farm. & Mech. Bank,* 19 John. Rep. 496.)

2. The $360, were not in the nature of a penalty; but the sum agreed to be paid. That sum is no more a penalty, than the sum in any large promissory note, given for a small consideration. The question, whether a sum of money agreed to be paid, is in the nature of a penalty, must depend on the facts to be collected from the face of the contract. The intent of the parties, must be gathered from the agreement itself. (Newl. on Contr. 307. Com. on Contr. 541. *Dennis* v. *Cummins,* 3 John. Cas. 297, 8. Holt's N. P. Rep. 45, note.) The nature and effect of the contract could not be varied by parol. This can only be done, where its words are equivocal, or there is a latent ambiguity. (*Peisch* v. *Dickson,* 1 Mass. Rep. 10.) Where a contract is in the alternative, to pay a sum of money, or do any other act, the money is always in the nature of liquidated damages. *Slosson* v. *Beadle,* 7 John. Rep. 72.) A new trial should be granted, so that the damages may be assessed correctly, at $360, and the interest.

3. Here was no valid performance, or tender of performance.

*G. C. Bronson,* contra. This being a case subject to the opinion of the Court, they come in the place of the jury; and we are entitled here, to every fair inference from the facts stated in the case. The usage set up on the trial, cannot sanction usury. Here was a loan. It was no more a sale, than the loan of money itself. True, the defendants might sell or dispose of the cows as they pleased. So might they of money, if they had borrowed that instead of cows; and one may fluctuate in the market as well as the other. Where the specific thing is to be returned, the lender may always charge what he pleases; not so where the return is in kind. (Ord on Usury, 26 to 29.) The loan may be in money, or what is equivalent to it; and there may be usury, where there is apparently a mere sale. (Ord on Usury, 29.) Nothing is more usual, than an attempt to disguise usury, in this and other forms; but they will not avail. (7 Bac.

Abr. Am. ed. 195, *Usury*, (C). *Pollard* v. *Scholy*, Cro. Eliz. 20. *Glisson* v. *Newton's Exrs.* 1 Hayw. Rep. 336. *Atkinson* v. *Scott's Exrs.* 1 Bay's Rep. 307. *Cutler* v. *Johnson*, 8 Mass. Rep. 266.) The letting of cattle, with large increase, in Massachusetts, is excepted from the statute of usury, (8 Mass. Rep. 259, Dana, *arguendo*,) which shows the sense of the legislature there, that otherwise such contracts would be void. Inadequacy of price, on sale, is evidence of usury. (Ord on Usury, 77. 2 Ves. Sen. 155.) So if there be a mere colorable contingency in the contract. (*Clayton's case*, 5 Rep. 70.)

If here be no usury, yet the plaintiff should recover no more than the value of the property he parted with, and lawful interest, estimated at $149 12, and this on the ground that the agreement was a hard and unconscionable one, affording a gain to the plaintiff, and producing a loss to the defendants, of 40 per cent. At any rate, he should recover no more than the value of the 12 cows, and the calves by their sides, and interest, the sum for which the verdict was taken. *Dennis* v. *Cummins*, (3 John. Cas. 297,) was decided against the sum being considered as liquidated damages, on the ground that it was extravagant, and out of all proportion with the sum really and honestly due. As much appears upon the face of this contract for the government of the Court, as on the contract in that case.

*Beardsley*, in reply, said, though it be true that money may fluctuate in the market, this is to a trifling amount; and ordinarily a loan, with a view to this, would be colorable. Not so of goods. You might as well say, that every sale by a merchant at a high price would be usurious.

*Curia*, per SAVAGE, Ch. Justice. The contract was not usurious; though the plaintiff was a very hard and unconscionable creditor. The interest and principal were both put at hazard to a considerable extent. It was uncertain in 1819, what would be the value of the cows in 1823. If the hazard be slight, and merely colorable, it will not take the case out of the statute; but I do not consider it so in this case. Here was no negotiation for a loan of money.

It was a bargain by which the plaintiff was pretty certain of making a handsome profit; but by which he might lose.(a)

(a) May Term, 1825.

HOLMES *against* WETMORE.

ON certiorari to a justice's court. Wetmore sued Holmes in the Court below, on the following agreement:

" *Whitestown, August 26th*, 1819. Ebenezer Holmes received of Ezra Wetmore ten ewe sheep, for which I promise to deliver twenty sheep, of as good a quality; three years from the date.

*Ebenezer Holmes.*"

Plea, the general issue.

On the trial, *sheep*, in August, 1822, were proved to be worth one dollar. The Justice gave judgment for the plaintiff, for 20 dollars damages and the costs.

Judgment affirmed.

HAMLIN *v.* FITCH. (Kirb. Conn. Rep. 260.)

Action on a note dated Feb. 28, 1785, by which the defendant promised to pay the plaintiff $16,839, in *final settlement certificates*, within six months from the date. On issue, the jury found that the note was given for the loan of this $16,839 in *final settlement certificates;* and that it was corruptly agreed between the parties that the defendant should give the plaintiff $1000 in lawful money, for the loan, beyond the legal interest, for the six months; and that the note was given in pursuance of this agreement; and therefore void. This finding was in the language of the issue.

On motion for judgment for the plaintiff; *non obstante*, &c.

*The Court*, (Judges Dyer and Pitkin dissenting,) gave judgment for the plaintiff according to the motion; saying, " To bring a contract within the statute, and the mischief it was made to prevent, it must be clearly for the re-payment of a *greater value* than the amount of the loan, with an advance thereon, at the rate of six per cent. per annum. That it be of a greater quantity, though of the same kind of article, is not sufficient. If the article be of a fluctuating value, and from such change or diminution of its value, as from its nature or the course of trade, it is subject to, it may not, at the time of re-payment, be worth more, or so much. A loan of one hundred bushels of salt, for example, in the year 1783, when it was at twelve shillings, to repay double the quantity, at the end of one year, when it might have been worth but four shillings, would not come within the statute, be the price what it might at the year's end. Nor would it make a difference, if it was to repay 106 bushels of salt, and a sum of money besides, provided both of them might not amount to more than the value of the loan, and six per cent. interest thereon.

" With regard to the final settlement certificates, said to be loaned in this case; it is matter of public notoriety, that they were, at the time of the con-

ALBANY,        I think the $360 in the contract must be considered as
Oct. 1825.    a penalty.  The verdict is, therefore, right, and the plain

Spencer       tiff entitled to judgment for the $208.(*b*)
v
Tilden.                            Judgment for the plaintiff.

tract, in a state of rapid depreciation ; and that, having no funds to rest upon,
for principal or interest, it was wholly uncertain how low they would fall, and
whether, at the end of six months, they would, if considered as merchandize,
(as they must be, to bring them at all within the description of the statute,)
be worth half so much as they were when loaned : in which case, the plain-
tiff, instead of gaining three hundred pounds, would lose that sum and the
defendant gain it.  The loss by the depreciation was at the plaintiff's risk.
As he received in the £300, a premium for the risk, the rule of damages upon
this note, would be the market value of the certificates, at the time they were
to be re-paid.  So was the case of *Lathrop* v. *West*, determined in this
county, where the loan was of depreciating continental bills ; and a sum in
hard money was taken as a premium for risking the depreciation upon them.
There the depreciation happening to exceed the premium, the plaintiff lost the
whole interest, and part of the principal, as might have been the case here.
The contract in this case, though in the form of a loan, was really in nature
of a speculation and bargain of hazard.  It depended upon a contingency, to
wit, that of depreciation, whether all, or how much of the principal, or value
loaned, should be repaid, and which of the parties the speculation should ulti-
mately favor ; which takes the contract entirely out of the statute ; (2 Burr.
891 ; Show. 8 ; Comb. 125 ; Holt, 738 ;) though it may leave a question,
how far the premium taken for the risk in this case, was unconscionable ; and
could be relieved against in equity."

The two dissenting judges recited the Connecticut statute of usury ; which,
as to the point decided, is the same as the statute of this state.

The case of *Morrisset* v. *King*, (2 Burr. 821,) seems to go upon much the
same principle ; and see *Shipwith* v. *Gibson & Jefferson*, (4 Hen. & Munf
Rep. 490.)

(*b*) This doctrine, which converts damages apparently stipulated, or fixed
by the parties, into a penalty, came from the civil law through the Court of
Chancery ; and has at length obtained a firm hold in the Courts of com-
mon law.  It is obvious, that, in order to enforce it, Courts must disregard
the particular expressions of the parties ; for the moment we agree, that a
party may, by calling a real penalty liquidated damages, or throwing it
into the form of an alternative in a contract, or substituting its payment
for some specified default, secure the whole to himself, without regard to
the real damage, we bring back the oppressive rule of the common law
The griping creditor will always use the particular form, or phraseology
of contract, which will secure him his pound of flesh ; unless the courts in-
terfere, in all cases, and tell him that, from the very nature and essence of

his bond, whatever he claims, and in whatever shape, or upon whatever foot-ing, if it be, in truth, plainly beyond the legal amount of damages, so far it shall be no more than nominal. Hence, it seems, that the rule laid down by Mr. Holt, in his note to *Barton* v. *Glover*, (Holt's N. P. Rep. 43, 45,) is, not-withstanding the doubt of Gibbs, Ch. J. in that case, the true one: viz. " Where a sum of money, whether in the name of a *penalty* or otherwise, is introduced in a covenant or agreement, merely to secure the enjoyment of a collateral object, the enjoyment of the object is considered as the principal intent of the deed or contract, and the penalty only as accessory, and there-fore only to secure the damage really incurred." Within the spirit of this rule is *Dennis* v. *Cummins*, (3 John. Cas. 297 ;) and *Slosson* v. *Beadle*, (7 John. Rep. 72,) does not depart from it. Some of the cases in England, put by Holt, in his note, look like an exception to this rule ; but the courts of that country will find themselves obliged to come back to it, or give it up. A plain, positive, settled exception, depending on the form of the contract, would destroy it. The rule is no more than what is laid down in the civil law, as deduced from a decision of Dumoulin, by Pothier, (vid. 1 Ev. Poth. 210,) that the penalty " being stipulated in lieu of damages, it is contrary to its nature to be carried beyond the limits which the law respecting damages prescribes." Nor can the Courts enforce this rule without looking freely to the contract ; not only, as it appears upon its face, but the comparative value of the consideration and thing to be performed, as they did here in the principal case ; for if they confine themselves to the language of the parties, it is so easy to disguise the real case by fair words, that the rule becomes nothing. The right to redeem from under the penalty, (to be made fully effectual,) must be held inherent in the contract, like the equity of redemption in a mortgage ; and not controlled even by the express intention of the parties. Mr. Evans, in his notes to Pothier, acknowledges the difficulty of deducing any general rule from the cases, which he considers at large, (vid. 2 Ev. Poth. 93 to 98 :) but, at page 98, he gives the form of a contract, in so many words, which, he suggests, may secure the creditor's object, and evade the scrutiny of Courts. If he be right, all the creditor has to do, is to make his debtor sign a contract copied from Mr. Evans ; and he may thus cripple or overreach all the Courts of law and equity. But I imagine their rules were not framed so loosely and inconsiderately, as to be overthrown by a mere transposition of words or sentences.