Brockenbrough, J.
By the statute it is declared that the taking on any contract, directly or indirectly, for loan of money, wares or merchandizes, or other com,' modules, above the value of six dollars for the forbearance of one hundred dollars for a year, shall be unlawful, and all contracts on which a higher interest is reserved are declared to be void.
It has been long ago decided that where, on a loan of money, there is a hazai'd that the principal sum lent may be lost, it is not usury to contract for a higher than the legal rate of interest, because, whilst on the one hand the lender may by some contingency receive greater interest than the law allows, yet on the other some event may happen that may altogether deprive him of his money. Comyn on Usury p. 21. 1 Atk. 340. In Mastin v. Abdee, 1 Show. 8. the court say—“ When there is a hazard that the plaintiff may have less than his principal, it is no usury.” And in Gibson v. Fristoe, 1 Call 81. judge Pendleton says—“If the principal or any considerable part be put in risque, it is not usury.” The restriction on the rule is, that where there is only a slight contingency, or the hazard is merely colourable, then the case is taken out of the statute. Comyn, p. 31. The same rules prevail as to the loan of any other commodity, as well as money. If any chattel be loaned, for the forbearance of which a greater sum or greater value be taken or reserved than the legal rate of interest, it is unlawful. But if the principal be hazarded, or if the commodity stipulated to be returned may be less in value than that loaned, although it is more in quantity and amount, such contract is not unlawful.
The researches of the counsel for the appellees have brought before us several cases from a sister state, in which it has b.een decided that upon the loan of a certain number of animals, such as cows or sheep, and a promise to return double the number in three or four years, the loan is not obnoxious to the charge of usury, *523 on the ground that it is uncertain, at the time of the loan, what will be the value of the animals to be returned several years afterwards; and that although the lender might probably have made a profitable bargain, yet he might, have lost some part of the capital itself. Spencer v. Tilden, 5 Cow. 144. Holmes v. Wetmore, Id. 149. note. Cummings v. Williams, 4 Wend. 679. And in Hamlin v. Fitch, Kirby’s Conn. Rep. 260. the court, in illustrating the matter then before them, say—“ A loan of one hundred bushels of salt in 1783, when it was at twelve shillings, to repay double the quautity at the end of a year, when it may be worth but four shillings, would not be within the statute, be the price what it might at the end of the year.” And the reason given for this opinion is a sound one. “ To bring a contract within the statute and the mischief it was made to prevent, it must be clearly for the repayment of a greater value than the amount of the loan with an advance of six per cent, per annum. That it be of a greater quantity, though of the same kind of article, is not sufficient. If the article be of a fluctuating value, it may not be at the time, of repayment worth more or so much.”
With respect to contracts for replacing stock at a future day according to the then state of the market, it seems to be now settled, that if the lender be not certain whether by the stock’s being replaced at the given day he shall be a loser or a gainer, any gain which he may obtain by the replacing will not taint the agreement with usury. Comyn, p. 114. Tate v. Wellings, 3 T. R. 531. Pike v. Ledwell, 5 Esp. N. P. C. 164. Maddock v. Rumball, 8 East 304. To which may be added the above case from Kirby’s Conn. Rep. 260. But on the other hand, if the lender has so made the agreement that he is secure from loss and has a chance of gain, this, by taking away the contingency deprives the transaction of its legality. Barnard v. Young, 17 Ves. 44.
*524 Tested by these principles, I think there can be no doubt that the third plea tendered by the defendants was properly rejected by the c.our-t. It does not aver that the contract to replace 142 shares then lent, by 172 at the expiration of a twelve month, was intended as a shift to evade the statute, nor that by the contract the lender was secured from any loss. The chief reliance of the pleader seems to have been that the 142 shares lent, and the additional 30 shares to be returned, were each of them of the value of 100 dollars at the date of the loan; whereas it is the uncertainty of the value of the stock at the time of its replacement, arising from the fluctuation in the price of the article, that is the turning point on which the question depends whether the loan be usurious or not. On the same principle, I am of opinion that in the instruction which wTas refused, and in that given, as set forth in the bill of exceptions, no error whatever was committed by the court.
The appellants contend that the court erred in rejecting the fifth and sixth pleas. Those pleas aver that Steptoe was only surety for Mitchell, (thereby departing from the terms of the covenant, which on its face shews that the covenantors were all principals); and then aver that Mitchell the principal, at the time when the shares became due, made a new contract with the covenantee, by which he extended the time for replacing the said shares. This brings up for adjudication one of the questions decided in Ward v. Johnson, 6 Munf. 16. In that case, it appeared on the face of the obligation that Ward was surety for Long the principal obligor, and yet it was decided that the defence, that the obligee had given time to the principal by taking a confession of judgment with a stay, of execution, by which the surety was alleged to be discharged, was not one that could be made at laxo, however it might be in equity, and a plea setting forth such defence was overruled on demurrer. That decision is supported by the case of *525 Davey v. Prendergrass, 5 Barn. & Ald. 187. I think we should not disturb the decision of Ward v. Johnson.
The last exception taken to the opinion of the court x ... relates to the order of proceeding in the trial of causes before a jury. It is undoubtedly the practice in England,, that he who holds the affirmative shall open the case, and close the argument to the jury. 3 Blacks. Com. 366. In this state, the practice has varied. In some of the circuits the english rule prevails; but in the greater number the plaintiff in all cases (except in writs of right) is allowed to begin, and the general court has recommended that to be the rule in all the circuits. I have thought that the english rule was the best: but however that may be, 1 do not think that the adoption of the other rule is any ground for reversing a judgment which is otherwise correct. I am for affirming the judgment.
Caiik, J.
Our act declares “that no person shall, upon any contract, take directly or indirectly, for loan of any money, wares or merchandize, or other commodity, above the value of six dollars for the forbearance of 100 dollars for a year” &c. This statute being copied, in its definition of usury, from an act of parliament, we are in the constant habit of referring to englisb decisions, upon any question as to its meaning and construction. From these decisions we learn, that there are a good many cases in which more than the value of six per cent, is reserved on the money or other thing lent, which yet are not considered as within the mischief or the meaning of the statute ; cases, for instance, of bottomry or respondentia, and post obit securities ; all cases indeed, where the principal advanced is not to be repaid at all events, but is on a hazard or contingency, provided such hazard and contingency be real, and not colourable merely. Ord, in his treatise on usury, p. 46. has this remark: “As the price of stock is in continual *526 fluctuation, the contingency respecting it has been held to exempt from the statutes of usury, agreements to transfer a specific amount at a specific future day, which, without such contingency, would be usurious.” support of this position he cites several cases: and many others may be adduced. In Maddock v. Rumball, 8 East 304. Rumball was indebted to Maddock a certain sum, for which he was sued ; but being unable to pay, and Maddock wishing to invest the money in three per cent, stock, it was agreed between them, in consideration of Maddock's forbearing his action and demand one year, that Rumball should transfer to him, at the end of the year, so much of that kind of stock as the sum due at the time of the agreement would purchase, and in the mean time should -pay Maddock the interest and dividends accruing on such stock; which it appeared upon calculation, produced more to Maddock than his debt and five per cent, interest. But all the court agreed that this was not usury, as the amount of the sum to be paid by Rumball depended upon a contingency; and if the stocks had fallen within the year, Maddock might have received less than his principal and legal interest would have amounted to. They considered this transaction as resting on the same footing with an agreement to replace stock lent; which, though once contended to be usury, if more than the principal and legal interest were thereby obtained, had been long settled to be legal. In Pike v. Ledwell &c. 5 Esp. N. P. C. 164. M. wishing to advance his son, agreed, on the 5th May 1801, to dispose of ¿C400. stock to P. for £ 160. to be transferred to him when his son should arrive at the age of 21 years, which would be on the 11th February 1804. The value of the stock when the agreement was made was proved to be £ 240. It was contended on the part of M. that this agreement was usurious. P. had paid £ 160. only, for stock worth £ 240. He got £ 80. by his bargain, and the dividends in the mean time. But lord *527 EUenborovgk said—“ Whatever remedy M. may have in equity on the ground of this being a catching bargain, he has none at law : contingency in the thing purchased is ’ , Jc . . , . incompatible with the idea or usury, in which the pnncipal must always be certain. It is admitted that if the stock when transferred to P. would be worth but £ 160. it would not be usury; that the stock would suffer that most extraordinary depreciation was very improbable, hot still it was within the reach of possibility. I cannot say that there was not some contingency in the transaction ; and therefore the contract was not usurious.” I consider this case peculiarly strong and apt to the point before us. It shews first, that it is the uncertainty of the value of the stock at the time of delivery, rather than the value at the time of sale, which is to be considered ; and moreover, that where there is any real contingency, the contract is not usurious. The case of Forrest v. Elwes, 4 Ves. 492. was thus—Forrest applying to Elwes for a loan, he transferred to him stock, upon bond to return the stock six months after dale, and in the mean time to pay interest at five per cent. The stock not being replaced, and being depreciated, the court decreed that the obligee was entitled to the value of the stock at the time of the transfer, with interest to the date of the report. I notice this case, simply to explain the reference to it by the master of the rolls in Barnard v. Young, 17 Ves. 44. This last was a contract for repayment of a debt with legal interest, or, at the option of the creditor, to transfer so much stock as it would have produced at the day it was payable. Sir William Grant observed—“ I am of opinion that the contract is usurious; as it reserves the capital with legal interest upon it, and likewise a contingent advantage, without putting either capital or interest in any kind of risk. The case of Forrest v. Elwes differs from this in the very point in which 1 conceive the usury to consist. In that case, the objection” (of usury) “ though at first made, *528 was properly given up; as; though it is true, if the stock had risen, the lender might have had more than principal and legal interest, yet on the other hand, if it had fallen, he would have had less; as he had no option to have stock or money, but the borrower could have discharged himself by merely replacing the stock. Here' the lender is at his election to have his principal and interest, or to have a given quantity of stock transferred to him. His principal never was at any hazard, as he was at all events sure of having that, with legal interest, and had the chance of an advantage if stock rose. It was usurious to stipulate for that chance.” Here we find this eminent judge declaring, that in contracts of this kind there is no usury where each party takes the hazard arising from fluctuation in price; and that the very point in which usury consists, is a provision by the lender against that fluctuation. In the case before us, there was no such provision; and surely every one mtfst say, that from the very nature of the subject it was liable \ to the fluctuations of the market. The case of White v. Wright, 3 Barn. & Cres. 272. 10 Eng. C. L. Rep. 75. decides the same principle, on the same ground of the option reserved by the lender of the stock. In the matter of Naish ex'x of Stewart, 7 Bingh. 150. 20 Eng. C. L. Rep. 81. Stewart and Pelham, in consideration of £ 1000. paid to Stewart, granted to Holland an annuity of £ 120. for four lives, and covenanted that in 30 days after the expiration of the third life, they would insure the ¿£1000. to Holland; and the grantors executed a power of attorney to enter up judgment for ¿£2000. but none was entered. A rule nisi was obtained to set aside the power of attorney, on the ground that it was void for usury. It was contended that this was not usury, because the principal was in hazard, as the two last lives might drop at once; or the last life might drop within the thirty days, and before the insurance was effected, and.in such case the covenant would be of no *529 avail. And the court decided that it was not usury, because of the hazard. Tindal, C. J. said-—11 The question is whether an advance of money, under the circumstances now laid before the court, comes within the statute of Anne, as a loan of money on which a larger rate of interest than five per cent, has been reserved ? The general rule is, that there is no loan where the principal is placed in hazard, because a loan contemplates repayment of the money lent: and where there is no loan, it is matter of agreement between the parties, on what terms the money shall be advanced.” The court also lay some stress on the fact that there was no affidavit imputing to the parlies the intention of a loan, or shewing that the principal had never been put in hazard. I will cite but one more case on this point. In the case of Gilpin v. Enderhj, 5 Barn. & Aid, 954. 7 Eng. C. L. Rep. 314. a deed was executed between the parties, by which they covenanted to become partners in the business of army clothiers, for ten years, and that Enderhj should advance ¿£20,000. as part of the capital for carrying on the business, and Gilpin should find a like sum ; that Enderhj should, during the continuance of the partnership, have out of the profits, if sufficient, or if not, out of the capital, ¿£2000. yearly for his share of the profits. Gilpin then covenanted, that on the determination of the partnership by effluxion of time, the sum of ¿£20,000. should be returned to Enderhj, and that Gilpin should guaranty all debts and pay all losses. At the end of the ten years Enderhj sued on this deed for the ¿£20,000. and Gilpin pleaded the statute of usury,—that the £ 20,000. was a loan for ten years, at the premium of ¿£2000. a year, and the deed a shift and device to evade the statute. Replication, that the deed was executed for good and lawful consideration, and not by way of shift &c. Upon this replication issue was taken, and the jury found a verdict for the plaintiff, thus negativing the corrupt agreement. A judgment *530 was rendered on this verdict in the common pleas, and a writ of error taken to the king’s bench, upon the ground that the deed manifestly exhibits a case of usury within the statute, and ought consequently to be pronounced void in law. Abbott, C. J. delivered the opinion of the court. He said—“ By the execution of this 'deed, Enderby undoubtedly made himself answerable as a partner to all strangers, though he might not be answerable as between himself and Gilpin. And if the deed discloses the real facts and the intention of the parties to it, this is not a case of a loan by Enderby to Gilpin, but a contract of partnership between them of a peculiar kind. If the deed does not disclose the real facts and the intention of the parties, but was executed only as a contrivance to cover a loan of ¿620,000. for ten years, at ten per cent, the deed was undoubtedly void; but this is a fact that ought to have been found, affirmatively by a jury, to enable the court thereupon to declare the deed void. No such fact has been found, and in the absence of such finding, we must consider the deed as speaking the language of truth. And so considering it, we cannot pronounce it void.” Now, if we compare the case presented by this third plea, with the cases cited shewing that the fluctuation in price, and hazard or contingency of other kinds, will take contracts and loans out of the statute, we must surely agree with the court that that plea presented no bar to the action: for it is a simple case of the loan of 142 shares of stock for twelve months, to have 172 returned for the forbearance ; with no provision securing the lender against the fall of stock, and no averment that it was meant as a shift or device to evade the statute, the real intention being an usurious loan. The plea then was properly rejected.
On the trial, the defendants moved the court to instruct the jury, that if they believed the consideration of the covenant was the 142 shares of stock lent by Harvey *531 to Mitchell for twelve months, of the value of 100 dollars each at the date of the loan, and that the 30 shares additiona.1, agreed to be paid, were reserved in consideration of the loan and forbearance of the 142 shares, and that the value of the said 30 shares was, at the date of said loan, greatly above six per cent, on the value oí the 142 shares, to wit, of the value of 50 dollars per share, though deliverable twelve months after, and that both parties so understood it, and intended to secure to the lender a compensation of the value aforesaid,—then, upon the third plea on which issue was joined, the defendants were entitled to a verdict; and this without any reference to the question whether the said Harvey might gain or lose, by the rise or fall of the stock. The court refused to give this instruction; and very properly, I think. For if the cases I have cited prove any thing, it is that the question of hazard, the consideration of the rise and fall of the stock, is the very point which takes the contract out of the statute. The court, I think, was, upon the same ground of reason and authority, equally correct in the instruction which it did give the jury.
I will turn now to another point in this complicated cause. A fifth and sixth pleas were tendered by the administrators of Steptoe, stating that their intestate executed the covenant as a surety merely, and that after-wards, without his knowledge or consent, a new contract was entered into between Harvey and Mitchell the principal debtor, by which, for a new consideration, further day of payment was given, and by which also the sureties were discharged. These pleas were objected to by the plaintiffs, as presenting no legal bar to their claim; and the court being of that opinion rejected them: to which the defendants excepted. It will be recollected that in the covenant declared on, no distinction of principal and surety is made: all are on its face principal obligors. In Ward v. Johnson, 1 Munf. 45. 6 Munf. 6. this very point was made; in the first place, by motion *532 to the court below. This court decided, that if the facts could avail the defendant at all at law, it must be by way of plea: and the cause was sent back. It came up again, with the plea regularly pleaded and demurred to, so as to present the naked point to the court. The cause was elaborately argued by Mr. Wickham, and Mr. Wirt, than whom we had no abler counsel: the cases of the discharge of sureties by such new contracts were cited: and the court decided unanimously, that this was no discharge at law, though it might be, and the majority seemed to think it would be, a discharge in equity. This decision was in 1817, and has never been questioned since, that I know of; and I am for standing by it. There is a later case upon this point—an english case—Davey v. Prendergrass, 5 Barn. & Ald. 187. 7 Eng. C. L. Rep. 62. There, upon debt on a surety bond executed by the defendants, conditioned to pay, within one month after demand, such balance not exceeding £ 500. as upon settlement of accounts S. P. and J. P. should appear to owe the plaintiff, the defendants pleaded a parol agreement made without their privity, giving time to the principal debtors to pay by instalments &c. To this plea there was a demurrer, which was sustained, upon the general rule of the common law, which requires that the obligation created by an instrument under seal shall be discharged by an instrument of equal validity. “ The operation of that rule” (says Abbott, C. J.) “ is indeed sometimes such as to make it imperative upon a court of equity to interpose and grant relief; but it by no means follows that the rule of law is to be broken down, because a court, having jurisdiction of another kind, will interpose where there is a particular case in which the rule' of law may be found to operate harshly. There is great objection to a court of law taking upon itself to act as a court of equity; because they have not the means of doing that full and ample justice which the particular case may *533 require.” In another part of his opinion he shews the distinction between the case before him, and others in which the courts of law have taken notice of this defence of the surety. “ Bills of exchange” (he says) “stand upon a different footing: there the law merchant operates, and the courts of law decide upon them with reference to that law. Guaranties for the payment of debts are not, in general, instruments under seal, and there is no strict technical rule which, as to them, prevents a court of law from looking at the real justice of the case. The cases of bail and replevin bonds are provided for by acts of parliament, giving to the courts an authority over them. A recognizance of bail stands upon a different ground from bail bonds, as to the jurisdiction of the court. There the jurisdiction is not founded upon statute, but upon a general authority in the court to see that an improper use is not made of its own records.” The court were right, then, in rejecting these pleas also. With respect to the last exception, taken to the decision of the court refusing to the counsel of the defendant the opening and conclusion of the argument to the jury: it is a question which can have no influence on the opinion of this court, in passing upon the final judgment of the court below. Suppose the defendant’s counsel ought to have had the opening and conclusion: how can we ascertain the effect of the refusal? The verdict was either contrary to the evidence, or it was not: if it was, that would be a sufficient reason for a new trial: if it was not, ought a new trial to be granted because the defendant’s counsel had not the opening and conclusion ? In the case before us, no new trial was asked, no objection taken to the verdict as being against evidence. It is not necessary then, in this cause, to give an opinion on this point; and I question whether it might not be better to leave the courts below and the general court to settle the practice as to it.
I am for affirming the judgment.
*534 Brooke, J. I concur in affirming the judgment.
• Tucker, P.
The first question in this case is as to 1 the discharge of the surety by the contract for indulgence, and the competency of this defence in a court of law. That the arrangement set forth in the plea would be such as to tie up the hands of the creditor, and of course to exonerate the surety, I am inclined to think; but I am satisfied that the defence can only be made in equity. This has been decided both in our own courts and in Westminster hall; and if the question is to be settled by authority, it has been so settled. In Ward v. Johnson, 6 Munf. 6. the surety to the bond pleaded that the creditor had taken a confession of judgment from the principal, with a stay of execution without his consent, to which plea the plaintiff demurred, and judgment was given in his favour. This court affirmed that judgment; admitting that the new contract entered into was a discharge in equity, but denying that it could be pleaded as a discharge at law. They declared that when an obligee covenants not to sue one of two joint and several obligors, and much more when he only covenants not to sue for a limited time, the covenant does not amount to a release, and the obligee may still sue the other obligor at law. In this case it is observable also, that the surety appeared to be such on the face of the bond. In the case of Davey & others v. Prendergrass, 5 Barn. & Ald. 187. in debt on a surety bond conditioned to pay such balance as upon settlement should appear due from Prendergrass to the plaintiffs, the defendants pleaded that the plaintiffs had given time to the principal debtors to pay by instalments, without the sureties’ assent. This plea was demurred to, and was adjudged bad; the court being clearly of opinion that the defence could not be made at law, but was only proper for a court of equity. The opinions of all the judges present were full to the point, and sustained by *535 the strongest reasoning. I must content myself with referring to them, as they are too much in detail to be transcribed, here. They cite as a decisive authority, moreover, the case of Bulteel v. Jarrold, in the exchequer, not at that time reported, but now to be found in 8 Price 467. 3 Cond. Eng. Exch. Rep. 422. The question may then be considered as incontrovertibly settled in England.
At the last term of the Lewisburg court of appeals, the question how far this defence could be made at law, came under consideration in the case of Steele v. Boyd.* That however was the case of a delivery bond, and the court considered the party entitled to avail himself at law of the defence. I beg leave to read the opinion which was delivered on that occasion as containing my own views of the case, in which I understood my brethren as concurring. [Here the president read the opinion on this point, delivered in the case of Steele v. Boyd.] In this case, then, it seems to have been the opinion of the judges, though certainly not directly upon the point decided, that in debt upon bond the surety could not plead this equitable discharge.
The case of Wright’s adm’r v. Stockton, 5 Leigh 153. affords, however, an exception to this position. In that case there were four sureties. Three of them had given the notice authorized by the act of assembly, requiring the creditor to proceed against the principal, and were discharged by his failure. The fourth pleaded this matter in his own discharge, and this court sustained the plea. I am satisfied that we did not err in that decision. A discharge by statute must of necessity be a legal defence, and is of course proper matter to be pleaded at law. It is equivalent, when it proceeds from the act of the creditor, to a release, and may therefore well be pleaded; and the court, considering the act which released three of the sureties as discharg *536 ing the fourth also, sustained his plea of that discharge. That plea might even have been pleaded, had the action been brought against the principal as well as the surety; and judgment might have been rendered upon it for the surety without impeding the judgment against the principal, both upon general principles, 2 Rand. 174. 1 Chitty 32. 1 Wms. Saund. 207. in note, and upon the express provision of the statute 1 Rev. Code, ch. 116. § 8. p. 462. which declares that the rights and remedies of the creditor against the principal debtor shall in no wise be affected by the act. But they certainly would be so affected, if the creditor was to be debarred of his judgment in the joint action against the principal, and compelled to commence another action against him alone.
I am not aware of any other decision bearing upon this question ; but those which have been- cited appear to leave no doubt upon the subject, as far as the matter can be settled by authority. They admit, that where the creditor has debarred himself from proceeding at law, by any act which, upon the principles of a court of law, arrests his right to go on, the matter may be pleaded at law. Such is the taking judgment with stay of execution, or the accepting a new contract in discharge of the judgment, 1 Call 18. or the release of the body after the execution has once been levied on the principal. They admit that the defence at law may be made in all actions of an equitable nature; and therefore in actions of assumpsit; in summary motions, in which the proceeding is always equitable; and even upon promissory notes and bills of exchange, which being simple contract debts, in which the party is permitted to go into the consideration, the question of discharge is always,. of course, vital and important in deciding the question of liability. They admit too, for the reasons given in Davey v. Prendergrass and Steele v. Boyd, that the defence may be made in the cases of bail and forth *537 coming bonds, since these constitute a part of the proceedings in the cause, over which the court must exercise its control in all its ramifications. And lastly they admit that where the surety has proceeded according to the statute, he may plead that matter in his discharge, because the statute declares that the creditor shall forfeit his rights against the surety, if he does not comply with the requisitions of the notice. But they do not admit that the surety may plead merely equitable matter to debt upon bond; or that in a court of law, in such an action, one obligor would be permitted to plead that he is but a surety, and that arrangements have been made by the creditor with the principal which would induce a court of equity to tie up his hands, although they would offer no bar to his proceeding according to the rules of a court of law. Thus a covenant, upon good consideration, not to sue for a given time, would be enforced in equity without doubt, and thus equity would tie up the creditor’s hands. Yet it has been solemnly decided in Ward v. Johnson, that a covenant not to sue cannot be pleaded at law, in bar of the action against the surety. Could it have been otherwise decided, without obliterating every barrier between the two jurisdictions ? And if this distinct, direct and definite legal contract could not be so pleaded, how could we admit a defence resting upon the loose and indefinite grounds which are often made the foundation of equitable jurisdiction ?
It is said indeed, that there is as much reason for admitting the defence in the action on the bond, as in the other cases above mentioned, and that no greater difficulties will arise in administering the principles of equity in the one than in the other. Be it so: yet the same thing may be said of the other distinctions in favour of bonds, which have been sustained by the legislature against every assault. It is enough for us to say what the established course of adjudication is, unlil the *538 legislature chooses to change the law. It is not for us to change it. Least of all, should I be disposed to see it changed so as to set the courts of law to speculating upon what a court of equity would do in a given case. Thus the surety pleads a transaction which does not tie up the creditor’s hands at law, according to the principles of the law tribunals, but alleges that a court of equity would tie them up. In deciding then upon this plea, the court of law must undertake to sa.y what a court of equity would do, and act accordingly. I cannot think that such a proceeding can either be sustained by authority or supported by reason, so long as we maintain the distinct characters of the two jurisdictions. Upon the whole therefore, I am of opinion that the fifth and sixth pleas of the defendant in this case were properly rejected.
We come next to consider the questions involving the inquiry whether the transaction was or was not usurious and void.
The first question as to this matter refers itself to the rejection of the third plea. It was, I think, properly rejected. The statute of usury is a highly penal act, and it is therefore proper that whoever is brought within its penalties, should be brought also strictly within its provisions. Its terms are indeed very broad and comprehensive, and' it is therefore difficult to commit the offence without falling within its grasp : but for the same reason there is less ground for a liberal interpretation, since, even construed according to the letter, it is sufficiently sweeping to embrace every case where the object of the parties is shewn to be usurious, and the transaction is but a shift to evade the statute. The courts too, for a like reason, have always required that the defence of usury should be pleaded with t^ie greatest strictness, and the usurious contract set forth with certainty and precision. If the defendant succeeds, the lender loses his whole debt, whereas if he fails at law in his proofs, *539 he may still resort in equity to the lender’s conscience, and obtain relief against the usurious gain. By this last proceeding, iustice is effected between the parties : the debtor is forced to pay what is due, and the lender disgorges his ill_gotten gains, or is disappointed of the victim around whom he had been artfully winding his toils. These considerations presented themselves very forcibly to our minds, in considering the case of Crenshaw’s adm’r v. Clark and others, 5 Leigh 65. and they are not inapplicable in this case, where the attempt is to get rid of a debt of between fifteen and twenty thousand dollars on the plea of usury. The defence, it is true, is on the part of the representatives of a surety, and does not therefore involve the moral obliquity of a complaint of extortion, preferred by a party who is willing to pocket ten times the amount of his adversary’s money, if he can effectuate his purpose by the assistance of the law. But still it is a defence which is to deprive the plaintiff of what is justly his due, and what the surety guarantied to him.
With these views, let ns proceed to consider the plea. We must confine ourselves to its face, without looking to any other part of the case to influence our opinions. By the statute it is declared “that no person shall, upon any contract, take directly or indirectly, for loan of any money, wares or merchandize, or other commodity, above the value of six dollars for the forbearance of one hundred dollars for a year,” &c. To constitute the offence then, under this act, the lender must receive, or contract to receive, above the value of six dollars for forbearance for a year. If he contracts to receive what at the end of the year may not be of the value of six dollars, he does not commit the offence. If I lend one hundred dollars when wheat is worth one dollar per bushel, upon contract to receive my money at the end of the year, with seven bushels of wheat for the forbearance, it would not necessarily be usury, because peradventure the se *540 yen bushels when delivered may be worth less than six , J dollars, and therefore it cannot be truly said that I have contracted to receive above six dollars in value. No court therefore could pronounce such a contract to be usurious; though if it were set forth in the plea, with proper averments that it was a shift to evade the statute, a jury might find it usury. For before that tribunal facts might appear, which might clearly shew that the reservation of interest in wheat was but a contrivance; that the parties well knew that the seven bushels of wheat would be worth more than six dollars value at the time it was to be paid. This would be evident, indeed, where the reservation is of a great amount. Thus, if twenty bushels of wheat were reserved as the interest of 100 dollars, though the court could never pronounce it usury, because it cannot judicially know that at the end of twelve months it might not be worth less than six dollars, yet the jury, whose province it is to ascertain facts, may know and may decide, that according to all probabilities the twenty bushels of wheat would be worth more than six dollars, and that the contract, therefore, was but a shift to evade the statute. The distinction arises out of the theoretical incapacity of the court to ascertain any fact or to judge of any motive, and the power of the jury to ascertain every fact and ferret out every motive. A plea of usury therefore should, on its face, either present such facts, “ with certainty to every intent,” as in themselves distinctly amount to an agreement to receive more than the value of six dollars for the loan of 100 for a year; or it must state the facts with such necessary averments of an intent to evade the statute, as that a jury, upon the trial, might decide that the agreement was in substance a contract for usurious interest, and a shift to evade the operation of the law. Now, the rejected plea in this case is defective in either view. Take it as professing to make out a complete case of usury from the facts themselves, and it is de *541 fective; for it alleges “that the loan was of 142 shares, i . to be returned with 30 shares more, worth at the time oj the contract 100 dollars.” But non constat what they would be worth when they were to he received; therefore non constat that the lender would receive more than six per centum. The court cannot estimate the value, which is in its nature fluctuating; and without averments that the parties well knew that the shares would be worth more at the end of the year, and that they corruptly agreed upon that reservation as a shift to evade the statute, the court cannot see that the transaction amounted to usury. I consider the plea, therefore, essentially defective in wanting such an averment. It is averred, indeed, that the 30 shares were then worth 100 dollars. But as they were not then to be received, their value at that time was immaterial. If I lend 1000 dollars, and for the forbearance receive at once 100 bushels of wheat, when wheat is worth a dollar, or a horse worth 100 dollars, it is usury. But if I contract to receive 100 bushels of wheat, or the same horse, a year hence, as my premium for forbearance, I may get less than six per cent, for my money, as the wheat may fall in value, or the horse become worthless. It is then, to the time appointed for the receipt of the premium, and not to the date of the contract, that we must look to ascertain the value of the premium; and as in this plea the probable value of the 30 shares at the end of the year is not set forth, together with the proper averments of the shift and evasion, the plea is substantially defective, and was properly rejected.
The fourth plea corrects the defects of the third, by averring that the 30 shares, “ though to be delivered twelve months after, were then worth 90 dollars cash, that the value was well known to the parties, and they were agreed to be paid as a premium, with intent to secure usurious interest.” This, I think, was a good plea; for though the price of the stock was fluctuating, yet if so *542 much was reserved, as to render it morally certain that more than shaper cent, would be received, a jury would be justified in finding the usury. Were it otherwise, a loan of 100 shares of stock to be returned in a year, with. 100 more shares as a premium, could not be brought within the penalties of the statute. It would indeed be to repeal the statute, if this were so.
It remains then to examine the instructions moved for and refused, and those given, upon this plea. I am of opinion that the instructions asked for were rightly refused. Without scanning them throughout, it is sufficient to advert to one point. The court is asked to instruct the jury, that if the 30 shares deliverable twelve months after date were worth at the date of the contract at least 50 dollars per share, the transaction was usurious. Now if those shares were worth only 50 dollars, the other 142 also could only have been worth 50 dollars. And thus Harvey would have lent 142 shares, then worth 14,200 dollars, to have 172 shares returned to him twelve months afterwards, worth at the same time only S600 dollars; thus losing near 6000 dollars, instead of securing usurious gain. The instruction asked for could not then have been proper.
Then, as to the instruction given. It is in substance, that the jury must be satisfied that there was an agreement for an excessive premium, and that to secure such excessive premium it was covenanted that the borrower should give the thirty shares of stock as an equivalent. The court further said, that if the jury believed that the loan was made without stipulation as to the value of the shares when they were to be returned, each party speculating upon the greater or less value of stock at that time, the transaction was not usurious. I can perceive no error in this instruction. The law does not forbid contracts of hazard, where that hazard is real and not merely colourable. Loans of articles of fluctuating value, to be returned in kind, are not usurious, *543 though a greater quantity than six per cent, of the like property is to be paid for the use of the property for one year. Thus if I lend or sell 1000 bushels of wheat, or 100 barrels oí flour, to have 1100 bushels ot wheat or 110 barrels of Hour returned at the end of the year, there may be no usury. It may be a mere contract of hazard, which is not forbidden by law, and which is of daily occurrence in fair commercial transactions. But if the hazard is merely colourable,—if it is alleged in the pleading, and appears satisfactorily to the jury, that in truth and in fact the property to be returned would, upon every reasonable calculation, greatly exceed the legal rate of interest, and that the arrangement was but a shift,—the transaction would be held to be usurious. Thus if I lend 1000 bushels of wheat, to have 5000 a.t the end of the year, it must at once be obvious, that under any probable state of the market, the quantity returned must exceed the legal rate of interest. So too with stock. The loan of 100 shares, on the terms of 200 to be returned in twelve months, might fairly be averred to be a shift, and I should think a jury might fairly infer it to be so. Indeed, in this very case, the jury might have drawn such an inference; but it is by no means a necessary inference. Had a loan of 100 shares of United States bank stock been made in 18.18, for 140, shares to be returned in twelve months, each party merely speculating upon the probable rise or fall, the loan would neither have been usurious, nor profitable to the lender, since stock was then worth 150 dollars for 100, and fell in a single year, I think, to par.* In like manner a sale of certificates at the price of ten shillings in the pound, when the market price was two shillings and sixpence, would have been exorbitant, and might have been inferred to be usurious. Yet if the *544 sale had been made when there was a prospect of the assumption of the state debts, each party speculating upon the probability of that assumption and the consequent rise of certificates, and not intending a cover for usury, the transaction would have been süstained, though the debt afterwards rose from two shillings and sixpence to more than twenty shillings in ihe pound. These cases all shew, that unless the gain is certain, it must appear that the hazard is merely colourable, or there is no usury. While, on the other hand, although the value of the commodity lent and to be returned be fluctuating, yet the transaction will be deemed usurious, if it appears that that fluctuation is a mere pretext and cover for usurious gain. And such, I think, is the fair interpretation of the several instructions of the court.
As to the last exception, it presents in effect the question whether, for the irregularity of denying the right of opening and concluding the argument, the verdict should be set aside and a new trial awarded. Considering the matter in this light, I am of opinion that the error set forth in the bill of exceptions is not sufficient to justify a reversal of the judgment and the award of a new trial. The rules as to the right of opening and concluding in the courts of England, 2 Tidd 908. are substantially the rules which have been held to prevail with us. Where the general issue is not pleaded, but issue is joined on a collateral fact, in which the affirmative is with the defendant and the proofs rest on him, he has the right to open and conclude. But where the' general issue is pleaded, or where by any part of the pleadings the affirmative is thrown upon the plaintiff, he must begin and have the reply, even though there may be other issues in which the affirmative is thrown on the defendant. But I do not think it follows that a new trial should be allowed, solely because of an error in this regard. New trials are refused, even where there have been much more serious irregularities in the *545 proceeding's ; as where the judge has permitted the jury to disperse, 2 Barn. & Aid. 462. or where a cause has been taken out of its turn and tried as an undefended cause, and there was no affidavit of merits. 5 Barn. & Aid. 907. If the facts in this case had been spread upon the record, and a new trial moved for, and the case had appeared doubtful, the denial of his rights to the defendant might have turned the scale in his favour; but the defendant having acquiesced in the verdict, having by that acquiescence acknowledged that it is according to the evidence and the instructions of the court, and having rested his defence upon the supposed errors of the court, and not upon a false finding by the jury, 1 see no ground for setting aside the verdict: and upon the whole matter am of opinion to affirm the judgment.
Judgment affirmed.

 Reported 6 Leigh 547.

 Note by the president. I am not certain as to dates. But the rise to 150 dollars, and the succeeding rapid fall to par about the close of Mr. Jones's presidency, is matter of history.