## CURRY *v.* LARER.

A. covenanted to deliver two boat-loads of coal at different days ; B. bound himself, by agreement under seal, in the sum of $240, as security for A. that he would perform all his covenants, and in default of his delivering the two boat-loads, or either of them, according to his agreement, that the covenantee might recover from B. the sum of $240. This sum is a penalty, and not liquidated damages.

In error from the Common Pleas of Schuylkill.

*April 4.* Debt. Salmon, by agreement under seal, had covenanted to deliver two boat-loads of coal, weighing sixty tons, to Larer, before two certain days, in consideration of the assignment of an unexpired term in certain coal lands.

On the same day, Curry, by a separate sealed agreement, " bound himself in the sum of $240, as security for the above-named Salmon, that he will well and truly perform all the covenants and agreements mentioned, and in default of Salmon *not* delivering the above-mentioned two boat-loads of coal to the said Larer, or either of said boat-loads, according to the above assignment, then the said Larer, by action of debt, may recover the said sum of $240 from me."

The breach assigned was the non-delivery of the first boat-load, and there was evidence none had been delivered. The action was brought before the time fixed on for the delivery of the second load.

KIDDER, P. J., instructed the jury the damages were liquidated, and the plaintiff could recover the stipulated damages without interest.

*Harris* and *Blythe*, for plaintiff in error.

*Campbell* and *Cummings*, contrà.

*April 10.* COULTER, J.—The agreement between Daniel Larer and Michael Salmon, and the guaranty of Patrick Curry, ought to be construed as one, being made at the same time, in relation to the same subject-matter, and by the same parties : 10 Pick.

250; and especially as the guaranty is, "that Curry, as security for the above Michael Salmon, binds himself that Salmon shall well and truly perform all the above-mentioned covenants and agreements." We cannot escape, therefore, from the conclusion, that the surety contemplated at the time, that Salmon was to have all the benefits of his covenants, and that if he delivered the first boat-load of coal according to contract, that he the surety would not be bound to pay damages for its non-delivery; yet the construction of the court below involves that discrepancy.

Salmon was bound to deliver two boat-loads of coal, one on the 1st of April, 1843, and the other on the 1st of October of the same year; and Curry becomes surety in the sum of $240, that Salmon shall perform the contract, and agrees, that if Salmon does not deliver both boat-loads, or either of them, that the sum of $240 may be recovered from him in an action of debt. The question is, whether the $240 is to be construed as a penalty in favour of the surety, or be enforced against him as stipulated damages, for the non-delivery of the first boat-load. In the English books, there are many cases as to whether such covenants or agreements shall be construed as a penalty or stipulated damages, and those decisions occasionally seem to invade the province of each other, and afford no certain rule by which a test can be applied. The general leaning, however, is, that such agreements shall be considered as penalties, so that a party shall recover such damages only as he shows that in justice and fairness he ought to recover. The general rule of law is, that the remedy shall be commensurate with the injury sustained. A scrutiny of the American cases leaves every agreement of the kind pretty much at large, to stand on its own peculiarities. The question whether a sum mentioned in an agreement shall be considered as a penalty, or as damages liquidated by the parties, is always a question of construction for the courts, but they will take into consideration the subject-matter of the contract, the usages accompanying such contracts, the situation of the parties, and other facts and circumstances, as helps to guide to a true construction: 11 Mass. Rep. 81. This case is presented naked, however; nothing was given in evidence by either party to throw a gleam of light on it, not even the value of the coal. It has been settled that if the rule furnished by the contract itself is unconscionable, the court will not be bound, in directing the assessment of damages, by its terms: Cutler v. How, 8 Mass. Rep. 257. In this case, the stipulation, on the part of the surety, goes beyond the covenant of his principal. The

surety, according to the construction of the court below, would be compelled to pay the same damages for the non-delivery of one boat-load, as if no part had been delivered. And he would be compelled to pay damages for the non-performance of the whole contract before the time given to the principal to perform one-half of it. Now this appears to me to be so unreasonable and unconscionable, that no man, as a surety, would have entered into the stipulation, with that understanding of its provisions. The scrivener was called who wrote the instruments, to prove their execution. He said that he drew them as Larer bid him, says nothing as to how the contract was understood by the surety, nor whether he was present when Larer gave the direction. I am constrained to believe that Curry, the surety, would not have understood that he was bound to pay damages commensurate with the loss of the whole contract, six months before his principal was bound to perform, but that he understood he was bound for the performance of the contract as it stood; having all the advantages that his principal was entitled to, and bound to answer in damages as he would have been bound. It has been so common to introduce such stipulations into agreements as a penalty merely, that people do not understand any thing else to be meant, unless there is something particular in the phraseology, to show that they were regarded by the parties as liquidating the damages for non-performance. In the case of Astley v. Weldon, 2 Bos. & Pull. 346, Mr. Justice Chambre observed, " There is one case in which the sum agreed for must always be considered as a penalty, and that is where the payment of a smaller sum is secured by a larger." Now in this case, if the agreed sum of $240 was adequate to cover the breach of the whole contract, or the two boat-loads of coal, it was certainly much larger than the value, or price of one of them; and therefore, according to the rule in the case I have cited, must be regarded as a penalty, when appropriated to the non-delivery of the first load. There is a strong analogy between this case and Gleason v. Pinney, 5 Cow. 152, where it was ruled, that in an action on a note for a sum of money, payable, in specific articles, at a certain price, the value of the articles, and not the sum expressed, is the measure of damages; and a case still more analogous will be found in 5 Cow. 144. In Tayloe v. Sandiford, 7 Wheat. 13, the court held, that the payment of a sum of money in gross, for the non-performance of an agreement, is to be considered as a penalty, and not liquidated damages; and if it is to be considered as a penalty in gross, for the non-delivery of both loads, it must retain the same

character as a penalty when applied to either. I apprehend that it is rare in practice, in this state, to consider the sum mentioned for the purpose of enforcing an agreement in any other light than as a penalty—so rare, that unequivocal indicia of intention to make it liquidated damages ought to be present, to induce courts to enforce it as such. The court below having instructed the jury that the sum of $240 must be considered as liquidated damages, which the plaintiff had a right to recover when the time for delivering the first boat-load expired, they were, in the judgment of this court, in error. The court do not perceive, in the other errors assigned, any sufficient cause for disturbing the verdict and judgment; but for this error, being the fourth assigned,

The judgment is reversed, and a *venire de novo* awarded.