Dana v. Fiedler.

WILLIAM P. DANA and others *v.* ERNEST FIEDLER.

The rule of damages, on the breach of a special contract for the delivery of a quantity of merchandise of a certain quality, and on a day fixed by the contract, (where the consideration is not payable before the delivery,) is the difference between the market value of the article on the day it should have been delivered, and the price which the plaintiff agreed to pay for it.

It should be left for the jury to say, whether the plaintiff shall recover *interest*, on the difference in value from the maturity of the contract. *Per* INGRAHAM, FIRST J.; DALY, J., concurring.

[*Per* WOODRUFF, J., *contra.* The facts being ascertained, the question of interest is a question of law; and the plaintiff, upon recovering the difference in value, *is entitled* to interest from the day fixed for the delivery.]

The defendant, in an action for the breach of a contract of sale, will not be allowed to prove what would have been the effect upon the market, if, by the fulfillment of his contract, the additional supply had been thrown upon it.

The opinion of dealers and of persons conversant with sales of the article, should be sought by general questions as to the value at the time in question, without reference to actual sales; and it is only on cross examination, for the purpose of testing the accuracy and extent of the witnesses' knowledge, that inquiries as to particular sales are admissible.

Where there have been no sales on the day when the contract called for the delivery; it is proper, on cross examination, to show the price immediately before and after. But whether, if no sale took place within three months before the day fixed for the performance, a sale at that period may be proved; *quere?*

Where a sale is shown to have been made fifteen days after the time fixed for the delivery, an examination into the various prices at which sales were made for three months before and after that time, in order to estimate an average value, will not be permitted.

It is immaterial and improper to show the *ordinary* market value. The value at or about the stipulated time of performance, will control, whatever it may have been before or subsequently.

Where a written contract contains all that is required to enable those acquainted

with the usages of the trade in the subject matter thereof, to understand what the parties have agreed to do, evidence of such usage is admissible to explain the meaning of technical or incomplete words or characters, when such explanation is consistent with the written terms of the contract.

Accordingly, where the written contract called for the delivery of " one hundred and fifty casks, ' of one ton each,' best EXFF madder, 12 1-4, 6 ms.;" it was *held*, that the plaintiff might prove, by parol, the meaning, in commercial usage, of the letters and abbreviations employed.

The employment of such letters and abbreviations, in an agreement required by statute to be in writing, will not render it void as for a patent ambiguity.

Evidence of the efforts made by the defendant to perform the contract, is not admissible in mitigation of damages, and can only be introduced when it shows an actual performance, or a readiness to perform, or the happening of an event, which, by the terms of the contract, would excuse a performance.

In a contract of sale, providing for payment of the consideration by the acceptance of a firm, a demand, accompanied with the tender of a blank acceptance of the firm, and a letter authorizing the draft to be filled up with the proper sum; is a sufficient offer to perform, on the part of the vendee.

The defendant's refusal to deliver, with his declaration that he had none of the article contracted for, would render unnecessary a tender to him by the plaintiff.

An assignment of a right of action for damages for the non performance of such a contract, may be made after the breach. The rule, that a claim for damages for a personal tort, is not assignable, has no application to a demand arising upon contract.

THIS was an action for damages, laid at $12,650 25, upon the breach of a contract for the sale of one hundred and fifty casks of madder. The agreement was concluded between the defendant and the plaintiff, William P. Dana, through the agency of a broker. The memorandum delivered to the plaintiff, Dana, was as follows :

"No. "New York, October 23d, 1849.

"Bought of Ernest Fiedler, Esq., account of William P. Dana, for Fearing & Hall's acceptance, one hundred and fifty casks, ' of one ton each,' best EXFF Madder, 12 1-4, 6 ms. The agreement is, that it shall be delivered on or before the first day of April next, dangers of the sea excepted. The quality to be approved by me.

"By your obedient servant,
"RANDALL H. GREENE,
"Broker in Drugs, Madder," &c.

Dana v. Fiedler.

Upon the face of this note, the words, "I agree to this contract," were written, and subscribed, "Ernest Fiedler."

Upon the sale note, given to the defendant, which was also signed by the broker, the firm of Fearing & Hall subscribed the words, "We agree to accept of the draft for this contract."

That firm was composed of Fearing, Hall, and Dana, three of the plaintiffs in this suit. The plaintiff, Dana, by deed executed ten days after the time fixed for the delivery of the madder, assigned to the other plaintiffs an undivided interest, to the amount of fifteenth sixteenths, in the contract and in all claim for damages by reason of the non-performance thereof.

From the evidence, as well as from the words of the memorandum, the inference is justified, that the defendant expected to *import* the madder.

On the first day of April, 1850, and at other times, the plaintiff, Dana, requested the defendant to fulfill the contract, and demanded the one hundred and fifty casks. On that particular day, there were two interviews between these parties; at one of which, Dana tendered a blank acceptance of Fearing & Hall, and produced a letter from them, stating that they had accepted the draft and had authorized it to be filled up with the price to be calculated in accordance with the agreement. At all the interviews, the defendant refused to deliver the madder, and stated that he had none to deliver.

All of the questions discussed at the general term, except that of the plaintiffs' right to interest, arose on the rulings of the presiding judge at the trial, excluding testimony, and refusing a motion to dismiss the complaint. Other facts, and the evidence bearing upon the points determined, appear in the opinions.

The cause was tried before WOODRUFF, J. The jury, under his instructions upon the law, found a verdict for $10,176 56, estimating the damages as the difference between the market value of the article, on the day fixed by the contract for its delivery, and the price agreed upon, and also interest upon such difference from the first day of April. The verdict, how-

ever, was special, the difference ($9,750) and the interest ($426 56) being found separately. The judgment entered was for these sums, with costs and an allowance, amounting in all to $10,983 18. The defendant appealed.

*Francis B. Cutting* and *Edward Sandford,* for the defendant, made and argued the following points :

I. The question as to the effect upon the market value, or the supposed market value, of madder, of an additional supply of the article to the amount of 150 casks, was competent and relevant to the question of damages in issue between the parties, and the judge erred in rejecting it.

II. His honor the judge erred in excluding the inquiries as to the ordinary quantity of madder which constitutes a supply of the market. The questions were competent and relevant in the point of view in which they were offered.

III. His honor the judge erred in excluding the inquiry made, as to the comparative extent of a stock of 150 tons of madder for a single printing works.

IV. His honor the judge erred in excluding the inquiries as to the ordinary market value of French madder of the description named in the contract, and of the range of the market value for that description for a reasonable period of time before and after the first of April, 1850. There was no actual market value on that day, and the defendant had a right to show to the jury the range of prices, both before and after, to enable them to judge of the damages sustained by the plaintiff.

V. The motion to dismiss the complaint should have been granted. 1. The action should have been brought in the name of the party with whom the contract was made, and in whom the legal right existed. On the part of the other plaintiffs it was the mere purchase of a hostile right to bring the defendant into court as a defendant to an action instituted to obtain the fruits of the purchase. It was the purchase of a mere right to recover damages, and such a claim has never

been assignable at law or in equity. (*Gardner* v. *Adams*, 12 Wend. 297, 99 ; *Hall* v. *Robinson*, 2 Comst. 293, 96 ; *Hoyt* v. *Thompson*, 3 Sandf. R. 416, 29, 33 ; *Prosser* v. *Edwards*, 1 You. & Coll. Eq. R. 481, 496, 99 ; 2 Story's Eq. Jur. § 1040 *g.*) 2. The contract, by reason of patent ambiguity, was so uncertain as to be incapable of being specifically performed, and was therefore void. 3. There was no performance and no proper or sufficient offer to perform the contract on the part of Dana. 4. Fearing and Hall did not bind themselves to accept Dana's draft.

VI. The parol evidence given by the plaintiff to explain and add to the written contract, was improperly admitted by the judge.

VII. The evidence offered by the defendant to prove the time of the failure of the firm of Richmond & Carr, and the effect which that failure had upon the credit of Fearing & Hall, was improperly excluded by the judge.

VIII. The evidence offered by the defendant to show that where a firm puts forth negotiable paper in the names of its individual members, to give it the appearance of their being separate and distinct parties to it, its character is depreciated, was improperly rejected.

IX. The judge erred in excluding the proof offered by the defendant of the acts done by him towards the execution of the contract.

X. The judge erred in excluding the evidence of the kind of madder which was called for by a contract for best EXFF madder.

XI. The judge erred in rejecting the evidence offered by the defendant as to the market value of the quantity called for by the contract on the 1st of April, 1850, and in the limitation put by him upon the evidence tending to show the extent of the damages.

XII. The judge erred in excluding the evidence as to what was said in connection with the interlineation of the words " dangers of the sea excepted," in respect to the madder not arriving by the first of April.

XIII. The court erred in excluding the evidence that the defendant had refused to give further credit to Jacob Dunnell & Co. before the making of the contract in question.

XIV. The judge erred in excluding the evidence offered by the defendant to show the shipments of madder made by him, and in rejecting the bills of lading therefor.

XV. The complaint should have been dismissed when the defendant renewed the motion for that purpose.

XVI. The judge erred in charging the jury that the plaintiffs were entitled to receive interest upon the amount of the difference of value from the maturity of their contract.

XVII. The judgment at the special term should be reversed, and a new trial granted.

*Augustus F. Smith,* for the plaintiffs, made and argued the following points:

I. The measure of the plaintiffs' damages was the difference between the contract price and the value of the madder on the day of delivery. This would enable them to go into the market and supply themselves with the article. (Sedgwick on Damages, 2d ed., 260; *Davis* v. *Shields,* 24 Wend. 322–327; *Clark* v. *Pinney,* 7 Cow. 681; *Dey* v. *Dox,* 9 Wend. 129, 134–5.) 1. With a view to the damages, it was not competent to prove what effect an additional supply of 150 casks would have had on the market. 2. Nor that 150 casks was an unusually large supply for the market. 3. Nor that 150 casks was a large stock for a manufacturer. 4. Nor what was the ordinary market value of the article. 5. Nor what was the range of market value for three months before and after the day of delivery.

II. The motion for the nonsuit was properly denied. 1. The transfer from Dana to his co-plaintiffs, was not void for champerty or maintenance. (*Mott* v. *Small,* 20 Wend. 212; S. C. 22 Wend. 403; 4 Kent, 449, note *b; Harrington* v. *Long,* 2 Mylne & Keen, 590.) It afterwards appeared that Mr. Dana and the other plaintiffs were jointly interested in the contract, and that the transfer did not change their interest in

any respect. This is a full answer to the objection. (Graham on New Trials, 285.) 2. The contract was not void by reason of any ambiguity. The "$12\frac{1}{4}$" and the "6 ms." were forms of expressions in use, and were understood among merchants. Evidence was subsequently offered and admitted tending to show their meaning in mercantile phrase, in connection with the subject matter of this contract. This evidence was properly admitted. (*Boorman* v. *Jenkins*, 12 Wend. 566, 573 ; 3 Phillips' Evidence, C. & H. notes, 1409 ; also 1418, 1419.) Upon all the evidence, the signification of the terms used in the contract was for the jury. (3 Phillips' Evidence, 1420.) 3. The plaintiffs had offered to comply with the terms of sale, and to give the acceptance required. No offer whatever was necessary; for the defendant, on the 11th of March, had "refused to have any thing more to do with the business." 4. The contract was complete without the writing across the face by the defendant, or by Fearing & Hall.

III. The evidence to show the failure of Richmond & Carr, in March, 1850, five months after the contract in question, and the effect of the intelligence in New York on the credit of Fearing & Hall, was properly excluded. So also was the evidence of the effect of one partner's drawing on another, without proof of misrepresentation or fraud.

IV. What Mr. Fiedler did in relation to the execution of the contract, was not admissible, unless other proof was given as required by the court.

V. The question, "under a contract for best EXFF madder, which kind of madder would it call for the delivery of?" was properly excluded. The contract called for the *best*, and the witness had just said that the "Pallude" was the best.

VI. There is no objection to the rulings of the court on the subject of value.

VII. What madder Mr. Fiedler dealt in, was wholly irrelevant.

VIII. Evidence of what was said before the contract was signed, was not admissible.

IX. Evidence that the defendant had refused to sell Jacob Dunnell & Co. was irrelevant.

X. The bills of lading were not competent evidence against

the plaintiffs to prove the shipment of madder, nor the day the vessel sailed. They were "*res inter alios acta*." (*Dickson* v. *Lodge*, 1 Stark. N. P. C. 226; 4 Phillips' Ev. 38.)

XI. The motion for a nonsuit, as renewed at fol. 236, was properly denied. 1. Mr. Greene, the broker, had authority to sign for both parties. (2 R. S. 136, § 8.) 2. To make the contract valid, it was not necessary that the names of all, or any of the parties in interest, should appear. (Story's Agency, § 270, and notes.)

XII. The plaintiffs were entitled to interest. (*Van Rensselaer* v. *Jewett*, 2 Comstock, 135; S. C. 5 Denio, 135; *Dox* v. *Dey*, 3 Wend. 356.)

XIII. If the court shall be of opinion that the question of interest should have been left to the jury, they will not disturb the verdict, but will deduct the amount.

INGRAHAM, FIRST J.—Several questions were raised during the trial as to the admission of testimony, which I will notice in the order in which they are stated in the defendant's points.

The defendant's counsel asked the witness what would have been the effect of an additional supply of madder, to the extent of 150 casks, in the market on the 1st of April, 1850, on the market value of that article?

The question was considered irrelevant, and the evidence excluded by the court.

The only ground on which such a question could be urged, is that it might affect the amount of damages which the plaintiff might recover, and that by showing that so large an amount of the article introduced into the market at that time, would reduce the price to the sum, or below the sum agreed to be paid for it, no loss would accrue to the purchaser for the non-delivery of it under the contract.

It was conceded by the defendant's counsel on the argument, that the rule of damages, as given by the judge to the jury, was correct, viz.: "that the rule of damages is the difference between the market value of the article contracted for, on the day it should have been delivered, and the price which the plaintiffs agreed to pay for it." The ordinary and proper

mode of ascertaining such value, is by the examination of witnesses acquainted with the market prices of the article at the time of delivery. The sales of the article on that day, and if none on that, immediately before and after, might furnish a proper standard of such value, but even that must be to some extent qualified by further inquiries to ascertain the quality of the article to be the same, and in the absence of any such means by which to fix the value, the parties would be compelled to resort to the opinion of witnesses dealing in that article, as formed from their general knowledge of the business. Uncertain as such testimony might have to some extent been, when resting on the opinions of dealers, the defendant sought by this question to go further, and to speculate upon the probable fall of the article in the market, if the defendant had performed his contract and the purchaser had then at once offered the madder for sale. There could be no propriety in admitting such an examination, or allowing it to go to the jury for the purpose of influencing their finding as to the damages, because, *first*, although it may be supposed that the defendant intended to import the article, still it was no part of the contract, nor is it in proof throughout the case, that any such quantity of madder was to be imported for the purpose of supplying this contract. The defendant was not bound to import the madder. He could have gone into the market and purchased as he pleased, sufficient madder to supply the contract, and the purchaser could make no objection; and it would be entirely immaterial whether the defendant purchased it at the place of delivery, or imported it, if in other respects he had complied with the agreement. As well might the plaintiff have asked leave to show what effect the withdrawal of such a quantity from the market, by the defendant's purchasing it, would have in increasing the price of the article, as to allow the defendant to show how much such an addition to the stock would diminish the market value.

*Second.* It would be altogether too uncertain a mode of ascertaining the value. It would render necessary an examination of the quantity ordinarily required to supply the mar-

ket, whether there were any causes for an increased demand, whether other factories might not be in contemplation, at which the article might be required, whether orders from foreign ports might not have been received for an increased supply, and many other inquiries might be suggested as proper, if such a course of examination was admissible.

*Third.* There was nothing to warrant the conclusion that the purchaser intended to put it in the market here, and if not, then the mere introduction of the madder into the country without being intended for sale, could neither increase nor diminish the market value of what remained.

*Fourth.* Because the defendant is presumed to have on hand, or under his control, the article he contracts to sell; and if so, it is immaterial as to the market value whether the same was held by the purchaser or seller.

*Fifth.* It would be manifestly improper to allow a party to violate a contract, and then, when called to account for such a violation, to allow him to speculate upon the consequences to the plaintiff, if he had performed his contract, and thus to obtain an excuse for such violation.

Other reasons might easily be mentioned to show that this examination, as to the effect upon the market of the additional quantity contracted for, was properly excluded. The inquiry was altogether too remote, and the result of the examination would be too uncertain for the purposes intended, even if it was not excluded for the other reasons above stated.

A question was put to the witnesses as to what kind of a supply 150 tons of madder would be for this market, which was also excluded.

From what has before been said, it must be evident that this question was also improper. It, no doubt, was offered with a view of showing, as was attempted by the former question, that 150 tons of madder were not necessary for the usual supply. The inquiry was of the same character as the former, and for the same reasons was properly excluded.

The defendant's counsel inquired what kind of stock for a printing works would 150 tons be?

If there were no other objection to this question than its immateriality, it would be ample to sustain the ruling of the court. It could have no effect upon the market value of the article whether one establishment consumed 10 or 100 tons of madder annually, without extending the inquiry to the number of such establishments in the country, the amount they all used, and what other uses the article was applied to here ; whether any was exported, and how much was imported. All these inquiries were of the same character as the first, and must be considered as falling within the rules applicable to that. The same reasons which apply to the first condemn the others.

The defendant's counsel asked what was the ordinary market value of French madder. This question was excluded, and the defendant excepted thereto. The ordinary market value of madder was not at all material to the decision of the question before the jury. If the ordinary value had been 10 cents, for a year before, and on the 1st of April, it was, as proved, 15 cents, it could not have afforded the jury any assistance in fixing the damages, because they were to be governed by the price as it existed at the time of performance fixed in the contract. An inquiry which did not establish the value at that time was not material to the issue.

The defendant's counsel then asked the witness what was the range of the market value of madder for three months before and after the 1st of April, 1850.

The propriety of this question being answered, was urged upon the ground, that no sales having been made of madder on the 1st day of April, there was no market value on that day, and therefore prices before and after were to be admitted in order to ascertain by an average that value. The court excluded the answer to the question.

Previous to the putting of this as well as the preceding question, the defendant had examined the witness as to the value on that day, and he had stated that value to be from 12 to 15$\frac{1}{2}$ cents, according to the quality. The witness could not state any sale on the 1st of April, but did on the 15th April, at 15$\frac{1}{2}$

cents.   Whether there was or not any propriety in going back a period of three months to the last sale, if none had taken place subsequently prior to the day of performance, it is not necessary now to decide, although, on cross examination, in the absence of any proof of subsequent sales, there seems to be some reason for permitting such an inquiry.   In this case, however, the question extended further.   It asked for a period of three months before and after the day of performance, after proof of the prices as they existed 15 days succeeding the day of performance.   There could have been no propriety in permitting the defendant to show prices subsequently to the 15th April.   Suppose madder had fallen after the 15th April 50 per cent. on the previous prices, the plaintiffs' rights could not have been affected thereby.   They were entitled to the market value on the 1st April, and the admission of evidence of a fall subsequent thereto, would tend to mislead the jury to the injury of the plaintiffs' rights.   That it may be proper to show, on cross examination, the price immediately before and after the day of performance where no sales were made on that day, I am disposed to concede; but I cannot accede to the propriety of an examination into the various prices at which sales were made for three months before and after. The jury could not make an average of the prices to obtain the value on any specific day.   That could only be done from the sale immediately preceding and following the day of per- formance, if it was right to depend on such testimony to fix the market value at all.   The proper mode of proving such value, I understand to be, by asking the opinion of dealers and per- sons conversant with the sale of the article referred to, the general question as to the value at the time, without reference to actual sales; and it is only on cross examination, and for the purpose of testing the accuracy and extent of the witnesses' knowledge, that inquiries as to particular sales are admitted. It is true, that a sale fairly made between purchaser and seller will give, in most cases, the market price; but still, particular sales are dependent on so many unknown causes, that they form no guide on which reliance can be safely placed for such

a purpose. But to allow an average of sales for three months before and after the day of performance, in order to obtain the market value, is certainly unwarranted by any case or principle which has come to my knowledge.

A somewhat similar question has been considered by the supreme court of this state, in *Gregory v. McDowell* (8 Wend. p. 435). In that case, in order to ascertain the market value of shingles on a particular day, at a particular place, evidence was offered and received of the value of them at neighboring places, and the expense of transportation to the place of performance. The court held such admission of testimony to be erroneous, where there was explicit evidence of the market value at the place of delivery. Such value must control, no matter what the value is at other places. So, in this case, where the evidence is clear as to the value at or about the time of performance, such value must control, whatever may have been the value before or after that period. The time of delivery was the period in the contemplation of the parties when the contract was executed, that was the time when the plaintiffs arranged to receive the property, and, for aught known to the court, he may have entered into contracts for the sale at the market value of that day. No other value than of that day could satisfy the engagements of both parties. In all these questions as to the admission of evidence relating to the value, was involved the general question as to the rule of damages in such cases. That rule, as generally understood, was given to the jury by the court and without objection, viz., the difference between the contract price and the market value on the day of performance. The difference which has arisen in the courts, as to allowing the plaintiffs to claim the highest price previous to trial, where the consideration money has been paid, does not affect this case, because no payment was made by the plaintiffs on the contract, and the only difficulty appears to have been as to the mode of arriving at such value. That this rule was correct, is apparent by reference to the cases cited. (15 M. & Wels. 136 ; 2 Barn. & Cres. 624 ; 3 Man. Gr.

& Scott, 249 ; and in this state, 9 Wend. 129 ; 24 Wend. 322 ; 7 Cowen, 687, 9.)

For the reasons before stated, I am also of opinion, there was no error on the part of the judge in excluding the evidence offered by the defendant, for the purpose of affecting the amount of damages by introducing a different rule than the one given ; or, in other words, by establishing a different value than the actual price or market value on the day of performance.

In all the cases I have cited, and, in fact, in all that I have examined on the subject, I have found but one in which any intimation is given to the contrary, and that case was so peculiar in its character, and the consequences which would attend the enforcement of the rule would have been so inequitable, as perhaps to lead the learned chief justice, who delivered the opinion, to more latitude of expression than he would have used under ordinary circumstances. I refer to the case in 3 Hill, 333. That case was one between bailor and bailee, and admitted of a somewhat different rule as to damages than what could be adopted between vendor and vendee. Even in that case, the court sustained the exclusion of testimony, to show that within a year after the time of performance the article contracted for had so fallen in the market as to be utterly valueless, and the chief justice remarked, that such evidence proposed to take into consideration the fluctuations of the market value long subsequent to the time when the injury happened (or the breach of the contract) ; thereby making the measure of damages to depend upon the accidental fall of prices at some future period, which might or might not occur.

The proposal to show a depreciation of the value of the article, even in its best condition, after the time of injury or breach of contract, was in that case held to be immaterial, and properly rejected.

On the trial of the case now before us, after the plaintiffs rested, the defendant moved to dismiss the complaint.

1. Because Dana assigned to the other plaintiffs an interest

in the contract and in his claim for damages for the breach of it, after such breach had taken place.

2. Because the contract was void for ambiguity.

3. Because there was no performance or proper offer to perform on the part of Dana.

4. Because the contract was not completed by a proper undertaking of Fearing & Hall, to accept the drafts of Dana, and was therefore without consideration.

The first point was not seriously pressed upon the argument. The rule that a claim for damages for a mere personal tort is not assignable, has no application to a demand arising upon contract, and there is nothing in the evidence which will in any way bring this case within the definition of champerty.

Besides, Dana was acting for all the plaintiffs, and made the contract for their joint benefit. Even without the assignment, the plaintiffs were the real parties in interest, and were in equity the owners of the contract, and of all benefits resulting therefrom.

The objection to the contract itself, as being void for ambiguity, is deserving of more consideration.

This objection applies to the figures which the plaintiffs contend designate the price and the terms of credit, the same being stated in the contract, as "$12\frac{1}{4}$, 6 ms."

The defendant insists that no parol evidence can be given to explain the meaning of these terms. That where the statute requires the contract to be in writing, no parol testimony can be received to supply the defect. The latter principle, I think, must be conceded; and if the testimony received was for that purpose, it was erroneously admitted. But where the evidence was only to explain the terms used, and not to alter the agreement, the rule is different. If the contract had been made payable in some foreign coin, it would not be denied that parol evidence might be resorted to, to show the value of such coin. In this case the term 6 ms. is complete, but may require an explanation of the term, so as to enable the jury to ascertain what in ordinary commercial language such an abbreviation was used to represent. So far as the evidence was

given to explain the term 6 ms., I have no doubt as to the propriety of admitting that testimony. It neither adds to or varies the contract, but is resorted to merely for the purpose of affording to persons not conversant with such terms, the meaning as ordinarily belonging to them. The term EXFF, as showing the quality of the madder, was on this trial allowed to be explained by parol proof, without objection. As to either term, that of quality or time of payment, the evidence was properly admitted. (3 Ph. Ev. 1394.) So far as any objection is made as to the meaning of the term " 6 ms.," it might, with propriety, be added, that it has become of such common usage, as to admit of doubt now whether any evidence is necessary to explain the same. The plain, ordinary and popular sense of such a term is now so well understood as to render any explanation of it unnecessary. It is to be understood as mankind at large understand it, and if in any trade the terms used have a peculiar meaning, evidence of such meaning is admissible.

The parol evidence objected to was also given to explain the term 12¼.

This evidence was as to the mode in which madder was usually sold, and the answer was by the pound, and at so many cents per pound. With such testimony the contract is easily understood, and without it, it is unintelligible. Whether the motion was properly denied must therefore depend upon the question as to the admissibility of the evidence.

Although the question is not free from difficulty, I am of the opinion that the rule requiring this contract to be in writing, will not exclude the testimony. It neither adds to nor varies the contract. It is offered merely to explain the meaning of certain figures used by the parties in their contract, and the figures used form one of those terms which are to be expounded according to the usage and custom of persons dealing in that business. The evidence itself was merely intended to show the mode among merchants of dealing in that commodity, which formed the subject of the contract. In the language of Ch. J. Savage, 12 Wendell, 573, " It is perfectly right and con-

sistent with fair dealing to give effect to language used in a contract as it is understood by those who make use of it;" and if by evidence of the general course of the trade, it becomes apparent from the contract itself what the parties intended by it, I see no objection to admitting such evidence for that purpose. It neither adds to, varies, enlarges, nor diminishes the contract, but enables the court and jury to read the contract as the parties have made it, in an intelligible manner. The information was properly given to the jury, as relating to the subject matter of the contract, not to the conversations or agreements of the parties ; and having such information, it was for them to say whether the contract itself was intelligible.

I concede that any omission in the contract, as written, cannot be supplied by parol. If the price or the term of credit or the quantity was wanting, no parol evidence could be allowed to show' what that was intended to be ; but where the contract contains all that is necessary to understand what the parties agreed to do, when the evidence explaining the usages of the trade in reference to it is admitted, such usage may be resorted to for the purpose of aiding in the interpretation of the contract. (5 Mill. Lou. Rep. 575, 279.)

This evidence does not alter the conditions of the contract. Its only object is to explain that which is *per se* unintelligible ; and parol evidence is admissible to explain terms used in the contract which are incomplete, if such explanation is not inconsistent with the written terms. (See cases cited in 1 Smith's Lead. Cas. p. 305, &c. ; 3 Mann. & Gr. 450 ; Story on Con. sec. 267 ; 1 Greenleaf's Ev. 282, 8, 292, 8.)

If the evidence was properly admitted, then there was no such ambiguity in the contract for which the motion to dismiss the complaint could be granted.

Another ground on which this motion was urged at the trial was, that there was no performance, or offer to perform, on the part of Dana.

The demand was made and accompanied with a blank acceptance of Fearing & Hall, and with a note from Fearing & Hall that they had accepted in blank, and that Mr. Dana was

authorized to fill the draft for the proper sum. This was a sufficient offer of performance on the part of Dana; and even if it were not, the refusal of Fiedler, and the declaration of Fiedler that he had no madder to deliver, rendered any further tender unnecessary. In fact, the draft was accepted, and was placed in Dana's hand with all the authority necessary to perfect it, if the defendant had not positively refused compliance.

We think, therefore, the motion to dismiss the complaint was properly denied.

The sixth and seventh points made by the defendant were not urged on the argument.

The evidence that was excluded related to matters which could have no bearing upon the merits of the controversy. The same remark applies to the eighth point.

The question put to the witness was objectionable, because it called for the mere opinion of a witness, founded on a supposed fraud, and also because there was nothing in the pleadings which allowed the defendant to set up fraud as a defence. Even if such a defence had been admissible, the opinion of a witness as to the effect of putting members of a firm on negotiable paper, as separate individuals, would not be proper, until other evidence had been given to warrant a suspicion that such fraud had been committed.

The defendant's counsel also inquired as to what the defendant had done in reference to the prompt execution of the contract, which was excluded, unless the defendant would show a delivery, or readiness to deliver, or that there was a shipment, and the arrival prevented by the dangers of the seas. That such evidence could have no connection with the real question at issue between the parties, must be apparent from the consideration that the action was for a breach of a contract, and that performance, or a good excuse for nonperformance, was all that the defendant could resort to as a defence, if the contract was a valid one.

The evidence excluded was not intended to show either of those grounds, and could have produced no other effect upon

Dana v. Fiedler.

the verdict, than to lead the jury to give a lesser amount of damages than the plaintiffs were entitled to recover. For this purpose it was not proper. The extent of damages which the defendant were entitled to recover was fixed as a matter of law to be the difference between the price of the article as agreed upon in the contract, and the actual market value at the time; and the jury had no discretion on the subject. They had no more right to reduce the damages below that rule, because the defendant had attempted to comply with his contract, than they would have had to increase those damages upon proof that the defendant had never made any exertions towards performance.

The 10th, 11th, 12th and 13th points were abandoned on the argument, and are clearly untenable.

The defendant offered sundry bills of lading of madder on board of vessels at Marseilles. This evidence was objected to, and the court ruled that the bills of lading were not competent evidence to show the time the vessel sailed.

This decision did not exclude the bills of lading if they were offered for any other purpose than to prove the time of sailing; but from the decision of the judge at the trial, I conclude that they were offered for this purpose. There is no ground of objection to the ruling, as far as any decision was made by the judge. It cannot be pretended that the bills of lading could in any way fix the day on which the vessels sailed. There was also better evidence of the time of sailing given by the same witness, who stated the time of arrival, and the length of passage each vessel had; thus showing the time of sailing more definitely than the proposed evidence could in any way make out.

There was nothing in the additional ground stated by the defendant's counsel on the renewed motion to dismiss the complaint, which called for the granting of that motion.

The notes containing the terms of the contract, were signed by the respective parties, who signed their names after the words, "I or we agree to this contract." It requires no stretch of the imagination, nor the indulgence of any legal fiction, to

come to the conclusion that these sale notes were respectively subscribed by the parties to be charged therewith, even to the extent of the law, as settled in *Davis* v. *Shields*, 26 Wend. 343.

The only portion of the judge's charge which was excepted to, was that allowing the plaintiffs interest on the difference of value, from the maturity of the contract.

In *Gilpin* v. *Consequa*, (Peters' C. C. Rep. 85,) it was held, that interest was not to be allowed on unliquidated damages, and in that case the action was for not delivering teas pursuant to a contract.

In *Dox* v. *Dey*, (3 Wend. 356,) a direction to the jury that they might, in an action for not delivering wheat, allow interest in addition to the value by way of damages, was said not to be contrary to law.

In *McLaughlin* v. *Washington Ins. Co.* (23 Wend. 525,) an action on a policy of insurance, the rule is stated from 1 J. R. 315, that interest is not recoverable upon unliquidated damages, or for an uncertain demand, but that jurors have a discretion to allow interest by way of damages, according to the circumstances of the case.

In *Bridge* v. *Niagara Ins. Co.* (1 Hall, 261,) and in the last case, it was held, that where the proofs did not furnish sufficient evidence to make up the amount of the loss, interest was not recoverable.

In *Beals* v. *Terry*, (2 Sandf. Sup. Ct. Rep. p. 127,) it was distinctly held, that in an action for non-delivery of goods, the rule of damages was the difference in the value and the contract price, with interest on such difference. None of the cases cited by the learned judge, who delivered the opinion in that case, refer to the question of interest, but only state the rule as to ascertaining the amount of damages from the difference between the contract price and the market value; and the distinction which is found in the previous cases between a direction to the jury to allow interest, and a discretion on the part of the jury to allow it by way of damages, if they thought fit, appears to have been overlooked.

Dana v. Fiedler.

From an examination of these cases, I think it must be apparent that the rule as adopted by the courts was, that the jury had the discretion to allow interest or not in an action to recover damages for not delivering personal property according to a contract; but that a direction to the jury to allow such interest was erroneous. The case last cited adopted 'a contrary rule, and the case of *Van Rensselaer* v. *Jewett*, (2 Coms. 139,) seems to approve of such a rule. It is, however, to be observed as to that case, that the action was for the recovery of rent, payable in wheat, and the plaintiff was entitled to recover interest on the value, although such value was uncertain. This decision was but an affirmance of the doctrine as held in a similar case by the supreme court, in 4 Wend. 313, and other cases, and can hardly be considered as overruling all the other cases that I have referred to establishing the contrary rule in actions for damages; although Judge Bronson, in his opinion, states the proposition as applying equally to cases, where a debtor neglects to pay a debt, or to deliver property, or render services in pursuance of a contract, and that in such cases indemnity is the amount of loss sustained at the time of violating the contract, and interest thereon.

My conclusion is, that the charge on this point was erroneous in directing the allowance of interest, and that the plaintiffs must remit that amount; or that a new trial must be ordered, with costs to abide the event.

WOODRUFF, J.—On the trial herein, the judge charged the jury that the rule of damages, on the breach of a special contract, for the delivery of a specific quantity of madder of a certain quality mentioned, and on a day fixed by the contract, is the difference between the market value of the article on the day it should have been delivered, and the price which the plaintiffs agreed to pay for it; and that the plaintiffs (if they recover) *are entitled to interest* upon such difference from the day fixed by the contract for such delivery.

The jury found a verdict for the plaintiffs in conformity with these directions, but found specially the aforesaid difference,

and the amount of the interest thereon, in separate sums, to the end that if the court should be of opinion that there was error in charging unqualifiedly that the plaintiffs were entitled to interest, they might be required to abate the interest, and take judgment for the difference in value only. Judgment having been entered at the trial for the whole amount of the verdict, this appeal is brought.

In my opinion, it is in all respects equitable and just that the plaintiffs should receive the interest upon the actual amount of loss sustained by them, by the breach of the defendant's contract, and I am not satisfied that the charge in this particular is in violation of any rule of law.

In actions for breach of contract, the object of damages is to give the plaintiff indemnity—to place him, so far as can be done, (without indulging in mere speculation, touching possible or probable profits from contemplated adventures,) in as good a condition as he would have been in had the defendant performed his contract.

The law, therefore, says, the plaintiff, having purchased goods deliverable on a future day certain, has *a right* to have the goods *on that day ;* it assumes, also, that he *hath need* of them on that day ; and that (the defendant failing to deliver) the plaintiff will buy them elsewhere ; and if he have to pay therefor a larger sum than that at which the defendant had agreed to deliver, he may seek, and shall recover from the defendant the excess.

This excess is then due to him from the defendant *on that day.* It is then that the defendant was bound to protect the plaintiff by making the delivery ; it is then that the plaintiff has been compelled to make an *advance of money* to make up to himself the defendant's default.

This view is at the foundation of the rule, (now, as I conceive, well settled, and in this case not questioned by the defendant's counsel,) that the difference between the contract price and the market value is the basis upon which the damages *must* be computed. The amount is at that time ascertainable by an easy reference to the then open market value, (a fact notorious

and presumptively universally understood, and therefore, within the knowledge of the defendant,) and that amount is fixed by a precise rule of law, so that *mere* computation is all that is necessary.

Another view of the plaintiff's rights leads to the same result. The plaintiff has a *right* to *have* the goods on the day named; if they are delivered, he will realize therefor the market value on that day. He is entitled to the benefit of his contract. Here is no contingency—no speculation about profits—the goods are worth the difference, and that difference the plaintiff loses. And the defendant gains it by his own default. This is the legal presumption. That difference, justice and equity require the defendant to pay over to the plaintiff on that day, and the rule of damages, last above stated, requires him to do so. The plaintiff may, or may not, have purchased with a view to sell again; he may have purposed to sell, or intended to hold, or to consume. Having purchased, he has a right to his option, and the law deems the open market value of the article to be the *real value* of the subject of the purchase to *him*.

Whether, then, the difference to which the plaintiff is entitled, be regarded as an excess which the plaintiff has been compelled, by the defendant's default, to pay, in order to supply himself with the article, or as a profit lost by the plaintiff, and gained by the defendant, by the like default, it is due to the former from the latter—it is due on the contract—it is due on the day. The amount is *certain*, because the rule is settled, and is precise. When the facts are ascertained, *i. e.*, when the known market value is adverted to, there is no room for discretion—no reason for delay, doubt or hesitation. Computation states the sum, and it is due on the very day specified.

So far, all is clear; nor to this point in the inquiry does the defendant's counsel object to the result.

Why, then, (if the defendant will neither make good his contract by delivering the article, nor by paying the difference,) should he not pay interest? There can be no indemnity without it. The plaintiff has paid the money in supplying him-

self with the article which the defendant agreed to furnish, or he has lost the money which the defendant, by his wrong, has put in his own pocket. Shall the plaintiff lose the interest? The money is wrongfully withheld from him in every just sense. If the defendant had in *very form* detained the money he owed the plaintiff, it is no where doubted that he should pay the interest; and here so much money is due as *clearly*, and the precise sum is settled by a rule as *fixed* and *definite*, as if it were mentioned in a promissory note.

But it is argued by the defendant's counsel, that interest is not recoverable upon uncertain or unliquidated demands, and such is undoubtedly the language of the books.

It does not, however, follow that the plaintiffs' claim here is of that loose and uncertain character which makes the proposition applicable.

Where nothing remains to be done between the parties to a claim, either to adjust or settle the amount, fix the liability, or apprise the defendant of all the facts necessary to enable him to pay the amount, which he knows the plaintiff has a right to require, and does demand, and where the amount to be paid is measured by a precise legal rule, I cannot regard the demand as either unliquidated or uncertain in such sense that the plaintiff is not entitled to interest as a rule of law. When the facts in the present case were ascertained, no liquidation nor adjustment was necessary. Computation was all that the jury were required to do, and there was no room for *discretion;* the damages were as *certain*, in a legal sense, as if expressed in the writing.

In the case of running accounts, the implication from the course of dealing is, that no interest is intended or expected until the accounts are adjusted and settled, and then the reason and the rule cease together.

In actions on policies of insurance, the damages (where the loss is partial) are unliquidated in precisely the same sense, and *only* in the *same sense*, as in the case now under consideration; and in cases which have been cited, (*Bridge* v. *Niagara Ins. Co.* 1 Hall, 261; *McLaughlin* v. *Washington Ins.*

Dana v. Fiedler.

*Co.* 23 Wend. 527,) it is held, that where the preliminary proofs furnished by the plaintiff were not sufficient to enable the defendant to make up the amount of loss, and ascertain the sum to be paid, it is inequitable to charge the defendant with interest. But where the proofs are not thus defective, (the reason failing,) interest is allowed. (S. C. 23 Wend. 527 ; and *De Longuemare* v. *The Tradesmen's Ins. Co.* 2 Hall, 631.)

So of claims for moneys payable on demand as for wages, or for money had and received by an agent or factor in due course of business, or on a contract in terms payable on demand. In actions of *tort*, where the rule of damages is not definite and certain, as in assault and battery, the amount of damages is, in a certain sense, discretionary with the jury. They may give what are called exemplary damages, according to the degree of aggravation which they find to characterize the act complained of. The whole case, with all its circumstances, is submitted to the jury, and they are called upon to apply their own judgment, not to apply a legal rule, and make a computation thereby. Here there is no recovery of interest, for the defendant has no fixed rule by which he can make compensation. The same is true in slander, and actions in which fraud is a ground of claim, either as the principal cause of action or matter of aggravation. But in *trover*, where the measure of damages (as settled in this state) is certain, viz., the market value of the goods—in this respect being precisely like the case now under consideration—interest is allowed from the day of the conversion, and for the same reason which is above given for allowing interest, viz., to indemnify the plaintiff. (*Bissell* v. *Hopkins*, 4 Cow. 53 ; *Dillenback* v. *Jerome*, 7 Cow. 294 ; *Hyde* v. *Stone*, 7 Wend. 354 ; *Baker* v. *Wheeler*, 8 Wend. 504 ; *Stevens* v. *Low*, 2 Hill, 133 ; *Clark* v. *Whitaker*, 19 Conn. 320.)

It was insisted, that while it is erroneous to charge as a matter of law, that the plaintiff is entitled to interest, yet it might be left to the jury to give interest or not, as they should think proper ; that it is a matter resting in their discretion.

I do not perceive either the propriety nor the soundness of this view of the subject, though I am aware that it has been

by some regarded as the correct one. If the *whole* question of damages were open to the jury, as in actions of *tort generally*, if it were proper to instruct the jury to give such damages as all the circumstances of the case seemed to require, with the same latitude given in actions for slander, assault and battery, fraud, deceit, &c., then, indeed, they should not be instructed to add interest as further damages. But such is not the case here. The plaintiff is confined by a rigid limitation of the extent of recovery to a prescribed rule of computation, which the jury may not exceed; and I can conceive of no more reason for submitting the question of allowing interest to their discretion, than for leaving to them the question whether the plaintiffs' recovery shall be computed according to the market value, on the day fixed. This doctrine has some foundation in the anonymous case found in 1 Johns. R. 315, and is sought to be implied also from *Dox* v. *Dey*, 3 Wend. 356.

In regard to the first case, which was an action on a policy of insurance, it is sufficient to say, that it is in conflict with 2 Hall, 631, and the contrary is distinctly stated in 23 Wend. 527, both above referred to. Other cases *in principle*, overruling this, in the supreme court and the court of appeals, will be afterwards noticed. And in regard to the second case, (*Dox* v. *Dey*,)—the jury having allowed interest upon a breach of contract precisely similar to that upon which the present verdict is founded—it was held not to be erroneous, *i. e.*, not to be an error of which the defendant could complain, that the judge had charged them that they "*might* allow interest if they thought proper."

For myself, I prefer to adopt the decision of the late learned chief justice Spencer, in a case in which the facts bear no analogy to the present, but in which the general principle decided was distinctly discussed; viz., that the question of interest is a *question of law*, the facts being ascertained. (*Liotard* v. *Graves*, 3 Caines, 234.) This principle, however, as before stated, having no application to torts, in which no precise rule of damages is given.

Whatever may be the English rule, and especially since the

Dana v. Fiedler.

statute 3 & 4 Wm. IV., which would seem to leave the question of interest to the jury in actions to recover either debts, or moneys due, or damages, we are not without authorities in this state in support of the views above suggested.

The case of *Spencer* v. *Tilden*, (5 Cow. 144,) in which the contract was held to be a contract to deliver 12 cows and 12 calves, the court held the plaintiff entitled to their value, *with interest* from the day when they should have been delivered. Even the defendant's counsel conceded there, that if the contract was not usurious, this was the rule of damages.

So in *Lush* v. *Druse*, 4 Wend. 313; *Van Rensselaer's Exrs.* v. *Jewett*, 5 Denio, 137; S. C. 2 Comst. 141, and *Van Rensselaer* v. *Jones*, 2 Barb. S. Ct. R. 643, all being actions founded on the breach of covenants for the delivery of personal property on certain days specified, the court held that interest is recoverable on the value of the articles from the days on which they should have been delivered.

It is true, that these last named cases were covenants for the payment or delivery of the chattels in question as rent. But I am at a loss to discover why that can make any difference with the rule in this respect. On the contrary, it was long deemed doubtful whether interest on *rent* could be collected, even when payable in money. And be it observed, that these covenants did not, like *Gleason* v. *Pinney*, (5 Wend. 393,) provide for the payment of a *sum certain* in specific chattels, but were simply covenants to deliver so many bushels of wheat, &c., on the breach of which the damages were *unliquidated* in every sense in which that term can be applied to the damages in the present case. And after much discussion, and a very full, careful and extended consideration in the supreme court and in the court of appeals, the value on the day, &c., *with interest thereon*, is held to be the rule of damages.

I am aware that it may be said, that the defendants in those cases had enjoyed the consideration for their contract—the plaintiff was enforcing the collection of a *debt*, but I do not discover how that should affect the rule of damages. The

duty or obligation was to deliver the chattels, and on default, to pay their value, and so here.

In the case now before the court, there was consideration enough for the defendant's promise. Had the whole consideration money been paid, he would have been under no higher legal obligation to deliver; it was a clear and well ascertained duty the defendant was required to perform on the day—to deliver the chattels, and on default to pay the difference before mentioned. In both cases the defendant was bound to make good his contract, and indemnify the plaintiff for the loss he had sustained. The market value of the goods was well known, and nothing but computation remained to be done.

To these cases is to be added *Beals* v. *Terry*, decided by the superior court of this city in general term, (2 Sandford, 127,) in which, it being a case like the present, it is distinctly held that interest is recoverable.

I have not gone into an extended review of the authorities on this subject. That has been done with great ability and much research in the cases from the supreme court and court of appeals last above referred to. I find no reason to doubt that chief justice Bronson expressed the opinion of the court of appeals, in what he said in 2 Comstock, 140; and if so, the present case must be deemed in substance and in principle decided there.

At all events, entertaining the views above expressed, and concurring with the first judge on all the other points raised on the argument of this appeal, I am of opinion that this judgment should be affirmed.

DALY, J.—I think the rule should be, in an action like this, that interest should be allowed as matter of law, upon the difference between the contract paid and the market value. But I feel constrained, upon the authority of the anonymous case in 1 Johns. 315, to hold that it must be left to the jury to allow it or not. Upon the other points I concur with my associates; though I think the right to parol proof in explanation of the mark, 12¼, exceedingly doubtful.

The direction of the court was, that the judgment should be reversed, unless the plaintiffs consented to deduct the interest; and that in case the interest was remitted, the judgment should be affirmed.